**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

<table>
<tr>
<td>

35 STATE STREET HOTEL PARTNERS,
LLC (d/b/a Hotel Californian)
36 State Street
Santa Barbara, CA 93101


                     Plaintiff,

    v.


ISABEL GUZMAN, ADMINISTRATOR OF
THE UNITED STATES SMALL BUSINESS
ADMINISTRATION, in her official capacity,
and UNITED STATES SMALL BUSINESS
ADMINISTRATION
409 Third Street, SW
Washington, D.C. 20416


                    Defendants.

</td>
<td>

Case No. 1:24-cv-00747

</td>
</tr>
</table>

**COMPLAINT**

## PRELIMINARY STATEMENT

1.      To help keep workers employed as the COVID-19 pandemic shut down economic activity across the country, Congress created the Paycheck Protection Program ("PPP").  Under this program, the United States Small Business Administration ("SBA")  was directed to issue loans to an eligible business to cover payroll costs and certain other expenses if the business had experienced a significant decrease in revenue because of the pandemic.  The SBA was also directed by statute to forgive PPP loans in full that were issued to eligible businesses if the business in question had used the PPP loan for payroll costs and other authorized purposes.  Thus, the PPP gave businesses vital assistance to keep their workers employed during the pandemic even as business operations came to a standstill.

2.      Among the businesses that were hardest hit by the pandemic—and whose workers were therefore most vulnerable—were hotels, which operate in an industry heavily reliant on foot traffic and travel, both of which ground to a halt as the pandemic spread.  In consequence, when it enacted the Coronavirus Aid, Relief, and Economic Security ("CARES")  Act—the law that created the PPP—Congress created special rules governing PPP eligibility for hotel businesses to ensure that as many hotels as possible could benefit from the program.  Specifically, the CARES Act waived the SBA's affiliation rules for certain business entities, including hotels, so that these businesses could receive PPP assistance regardless of whether they were affiliated—through common ownership or otherwise—with other businesses.  Ordinarily, whether a business qualifies as a small business, and is therefore eligible to receive SBA assistance, is determined based on the total number of workers the business and its affiliates employ in the aggregate.  But for hotels seeking PPP assistance, the CARES Act ensured that a business's affiliation with other entities was irrelevant to whether the business was eligible to participate in the PPP.

3.     Plaintiff 35 State Street Hotel Partners, LLC (d/b/a Hotel Californian)  operates a resort hotel in Santa Barbara, California.  Like countless other hotel businesses, the COVID-19 pandemic severely disrupted Hotel Californian's operations as tourism and business travel on which the hotel relies for revenue declined dramatically, to the point where Hotel Californian was faced with the imminent prospect of closing its doors and laying off all of its workers.

4.     To avert the catastrophic consequences that a closure would have for its workers, Hotel Californian applied for and was granted a PPP loan, which was subsequently forgiven in full. After the proceeds of the first loan ran out, Hotel Californian applied for a second PPP loan, which was also granted.   Under the CARES Act, Hotel Californian was fully eligible to receive both loans—indeed, Hotel Californian is precisely the kind of business whose workers Congress intended to assist when it created the PPP and the program's special eligibility rules for businesses in the hospitality industry.  Hotel Californian also used the proceeds of its PPP loans for authorized expenditures, and was therefore entitled to have its loans forgiven.

5.     Despite the plain, unmistakable text of the CARES Act that makes Hotel Californian's affiliation with other entities irrelevant to its eligibility to receive a PPP loan and entitles Hotel Californian to loan forgiveness, the SBA denied Hotel Californian forgiveness for its second PPP loan.  The SBA did so based on an interim final rule that the agency promulgated that has no basis in, and in fact directly contradicts, the CARES Act.  The SBA's so-called single corporate group rule purports to limit PPP eligibility based on whether a business shares common ownership with other businesses that also received PPP loans.  In particular, the rule provides that a group of entities that are affiliated by common ownership cannot receive more than $4 million in PPP assistance in the second round of loan disbursements.  Because other entities with which it shares a common owner received $4 million in PPP loans, Hotel Californian was, according to the

SBA, ineligible to receive any PPP assistance, and was thus effectively shut out of the program. But Congress expressly provided that affiliation with other businesses is not a factor in determining PPP loan eligibility for entities in the hospitality industry. The SBA's rule—which serves as the sole basis on which the agency denied Hotel Californian loan forgiveness—is thus *ultra vires*, and must be vacated.

6.      For over a year, Hotel Californian engaged in the SBA's internal appeals process, filing multiple appeal petitions before the SBA's Office of Hearings and Appeals that set out in detail why Hotel Californian was entitled to forgiveness. After a protracted and convoluted process—during which the SBA changed its rationale for why it denied Hotel Californian loan forgiveness, and did so in a way that reinforces the obvious contradiction between the single corporate group rule and the CARES Act—the SBA issued a final denial of loan forgiveness on October 18, 2023. Hotel Californian now seeks judicial relief from that denial.

## PARTIES

7.      Plaintiff Hotel Californian is a 121-room seaside resort located at 36 State Street, Santa Barbara, California. It features five upscale restaurants and bars, a beachfront pool, and wedding and event facilities. Guests have enjoyed Hotel Californian's world-class services and amenities since it first opened in 2018. As an establishment operating in the hospitality industry, Hotel Californian has a North American Industry Classification System ("NAICS") code of 721110.[1] Hotel Californian is 61 percent owned by Michael Rosenfeld. Mr. Rosenfeld also has a greater than 50 percent ownership stake in three other hotels that received PPP assistance: WRC

---

[1] NAICS is the standard used by Federal statistical agencies to classify business establishments by industry and is also used by the SBA to determine loan eligibility in various SBA programs, including the PPP.

Newport, LLC ("Newport"); WRC Huntington, LLC ("Huntington"); and Pine & Powell Partners, LLC ("Pine & Powell") (collectively, the "Affiliated Entities").

8.    Defendant SBA is an administrative agency within the U.S. Department of Treasury that administers the PPP.  It is headquartered at 409 3rd Street, SW, Washington, DC 20416.

9.    Defendant Isabel Guzman is the Administrator of the SBA.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Hotel Californian's causes of action arise under and allege violations of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and the CARES Act, 15 U.S.C. § 636.

11.    Venue is properly vested in this Court because at least one defendant resides in this district, *see* 28 U.S.C. § 1391(b)(1), and because the SBA's "[f]inal decisions" regarding PPP loans "may be appealed to the appropriate Federal district court," 13 C.F.R. § 134.1211(g).

## BACKGROUND
### a.    The COVID-19 Pandemic and the Collapse of the Hotel Industry

12.    In 2019, a novel and highly contagious coronavirus called COVID-19 emerged in Wuhan, China, and rapidly spread across the world.  At that time, there was no effective treatment or vaccine for the virus.  The coronavirus accordingly posed a considerable threat to public health, and resulted in a pandemic unlike anything the world had experienced in at least a century.

13.    On January 31, 2020, the U.S. Department of Health and Human Services declared that COVID-19 was a public health emergency and imposed mandatory quarantine orders on Americans returning from Wuhan.  The federal government later expanded the quarantine and suspended the entry into the United States of foreign nationals who had recently been present in countries with high incidences of COVID-19, including China and most of Europe.

14.    On March 11, 2020, the World Health Organization declared that the COVID-19 outbreak was a global pandemic.  By that point, over 1,000 Americans in 47 states had been infected by the virus.

15.    On March 13, 2020, President Trump declared a national emergency pursuant to sections 201 and 301 of the National Emergencies Act, 50 U.S.C. § 1601, *et seq*.  The emergency declaration was later renewed 13 times and would not expire until May 2023.

16.    Despite the efforts of public health officials, the coronavirus quickly spread.  State governments issued their own emergency declarations and sought to quarantine interstate travelers. As hospitals' intensive care units began to exceed their capacity and treatments for the virus proved ineffective, states—with the encouragement of the federal government—ordered the temporary closure of all non-essential businesses and directed their citizens to remain at home unless travel was necessary.

17.    The economic consequences of these stay-at-home orders were dramatic.  Business closures and the near-complete cessation of all non-essential travel had catastrophic consequences for businesses and workers.  As the pandemic took hold, 56 percent of businesses experienced a decrease in demand for their goods and services, and 19 percent were subject to government-mandated closures.  Approximately a quarter of all businesses placed at least some of their workers on unpaid leave.  At the end of March 2020, weekly claims for unemployment insurance skyrocketed by three million in the span of a week.  In April, 20.7 million Americans lost their jobs and the unemployment rate rose to 14.7 percent—the highest rate on record since the Bureau of Labor Statistics began recording data in 1948.

18.    The hospitality industry—which includes hotels and restaurants—was subject to some of the most severe economic fallout of the pandemic.  Because these businesses are heavily

reliant on tourism, business travel, and foot traffic, stay-at-home orders and travel restrictions effectively eliminated most sources of these businesses' revenue. Over the course of 2020, the hospitality industry experienced a 71 percent decrease in demand—the second-highest decrease of any industry, with only the air transportation industry seeing a larger decline of 76 percent. The consequences for workers in the hospitality industry were commensurately severe. In March and April 2020, alone, 8.2 million hospitality workers lost their jobs, representing a nearly 50 percent decrease in employment in the industry. Even with the entire national economy confronting an unprecedented crisis, the hospitality industry and its workers faced uniquely bleak prospects.

  **b.  Congress Acts To Prevent Catastrophe and Provides Special Protection for the Hospitality Industry**

  19.  To avert economic calamity, Congress took swift and dramatic action. On March 27, 2020, Congress passed and the President signed the CARES Act, which provided over $2 trillion in emergency economic assistance to shore up the economy. Among other programs, the CARES Act created the PPP. Through the PPP, the SBA was directed to provide hundreds of billions of dollars in assistance to businesses so that the businesses could afford to keep their workers employed and on payroll even as the economy came to a standstill. As the U.S. Department of Treasury explained, the purpose of the PPP was to provide businesses with "the resources they need to maintain their payroll, hire back employees who may have been laid off, and cover applicable overhead."[2] Senator Susan Collins, who sponsored the CARES Act, noted that PPP loans would allow "desperately needed relief to reach small businesses to help prevent

---

[2] U.S. Dep't of the Treasury, Paycheck Protection Program, available at https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program.

them from going under and to help save millions of Americans' jobs."[3]  Then-Treasury Secretary Steven Mnuchin and then-SBA Administrator Jovita Carranza similarly praised the Program for "providing critical support to millions of small businesses and tens of millions of hardworking Americans" and "ensuring that America's workers and small businesses get the resources they need to get through this challenging time."

20.    PPP assistance was made available to any small for-profit business entity, with a business's size defined by employee headcount, that had experienced a reduction in gross receipts of 25 percent or more in a quarter of 2020 as compared to the same quarter in 2019.  Assistance was provided in the form of a forgivable loan from the SBA.  PPP loan funds could "be used to help fund payroll costs, including benefits," as well as "worker protection costs" and other expenses.  Department of the Treasury, *Paycheck Protection Program First Draw Loans*, https://home.treasury.gov/system/files/136/Top-line-Overview-of-First-Draw-PPP.pdf.    Under the program, a business was *entitled* to full forgiveness of the loan and would "not be responsible for *any* loan payment," if, for a certain period following loan disbursement, the business maintained "employee and compensation levels" and "all of the loan proceeds [were used] for forgivable purposes," including payroll costs, healthcare expenses, and rent or utility payments. *Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act*, 86 Fed. Reg. 3692, 3704, 3706 (Jan. 14, 2021) (emphasis added).

21.    To implement the PPP, the SBA rapidly issued a series of interim final rules, promulgating the first one on April 15, 2020, less than three weeks after the CARES Act had been enacted.  *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed.

---

[3] Press Release, Senator Susan Collins, *SBA, Treasury Roll Out Information for Small Employers and Lenders to Participate in $350 Billion Loan Program*, (Mar. 31, 2020), https://www.collins.senate.gov/newsroom/sba-treasury-roll-out-information-small-employers-and-lenders-participate-350-billion-loan.

Reg. 20817 (April 15, 2020). Those rules explained that, for purposes of determining a business's size, and therefore whether it was eligible for PPP assistance, the SBA would take into account whether the business is affiliated with any other entities, and factor any affiliated entities' size into the agency's size determination. *See* 85 Fed. Reg. at 20818 ("In most cases, a borrower will be considered together with its affiliates for purposes of determining eligibility for the PPP."). To assess affiliation and the size of business entities, the SBA relied on its existing regulations, which provide that businesses are "affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both." 13 C.F.R. § 121.103(a)(1). Under SBA regulations, common control, and thus affiliation, may exist where two or more business entities share a majority owner. *See* 13 C.F.R. § 121.103(c) ("A person . . . that owns, or has the power to control, 50 percent or more of a concern's voting stock . . . controls or has the power to control the concern.").

22.     Thus, businesses are ordinarily ineligible to receive SBA assistance—including PPP assistance—if they share a common owner with other entities that, in the aggregate, have an employee headcount that exceeds the SBA's size standards. Because the vast majority of American hotels are part of larger networks of hotels that share a common owner, business entities in the hospitality industry are often ineligible for SBA assistance.

23.     As it acted to shield American workers from the dire consequences of the pandemic, Congress recognized that, if left unchanged, the SBA's existing regulations would effectively bar many businesses harmed the most by the pandemic—namely those in the hospitality industry—from receiving essential PPP assistance. While hotels' operations were effectively destroyed by the pandemic, the ownership structure within the industry would have effectively shut them out of the PPP if ordinary SBA rules governed. To solve the problem, Congress enacted a special

accommodation for the hospitality industry under which the SBA's affiliation rules, and "any successor regulation," would not apply to entities in the industry, which Congress defined as entities with a NAICS code starting in 72. *See* 15 U.S.C. § 636(a)(36)(D)(iv). Congress thus ensured that millions of workers in the hospitality industry who faced imminent layoffs and protracted unemployment would be able to benefit from one of the most critical pandemic relief programs that Congress created through the CARES Act.

24. The initial PPP loans—known as First Draw loans—were disbursed in 2020. As the pandemic continued to ravage the country, and stay-at-home orders remained in place, Congress authorized funds for a second round of PPP loans—known as Second Draw loans— when it enacted the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Economic Aid Act") on December 27, 2020. The eligibility criteria for Second Draw loans were largely the same as those for First Draw loans. To receive a Second Draw loan, a business must have received a First Draw loan, employed no more than 300 people, and demonstrated at least a 25 percent reduction in gross receipts between comparable quarters in 2019 and 2020. *See* 15 U.S.C. § 636(a)(37)(A)(iv). Likewise, businesses were "eligible for loan forgiveness" of Second Draw loans "on the same terms and conditions" as First Draw loans, meaning they were eligible for forgiveness if they had been eligible to receive the loan and had used the loan for authorized purposes. *Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, 86 Fed. Reg. 3712, 3722 (Jan. 14, 2021).

**c. The Unlawful Single Corporate Group Rule**

25. Through the interim final rules that it issued to implement the PPP, the SBA created a "single corporate group" limitation on PPP loan eligibility. Under this limitation, the SBA purported to restrict businesses' access to PPP funds by providing that "[b]usinesses that are part

of a single corporate group shall in no event receive more than $4,000,000 of Second Draw PPP Loans in the aggregate." 86 Fed. Reg. at 3720. The SBA's regulations state that businesses "are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent." 86 Fed. Reg. at 3702 (definition of "single corporate group" for First Draw loans); *see* 86 Fed. Reg. at 3720 (adopting same definition of "single corporate group" for Second Draw loans). The SBA's definition of a single corporate group, and thus the agency's administratively invented criteria for determining which business entities may receive PPP assistance and in what amount, thus relied on a factor—common ownership—that is also used for determining affiliation for purposes of applying the SBA's general size standards.

26. In its interim final rules, the SBA acknowledged that the CARES Act "waived the affiliation rules contained in [13 C.F.R] § 121.103 for . . . any business concern with not more than 500 employees that, as of the date on which the loan is disbursed, is assigned a NAICS code beginning with 72." 86 Fed. Reg. at 3714 n.16. Yet the agency did not exempt these business concerns from the single corporate group rule.

27. In practice, the single corporate group rule functions as a complete bar to certain businesses receiving the PPP assistance to which they are entitled. Under the CARES Act and the Economic Aid Act, an eligible business entity is entitled to receive up to $2 million in a forgivable PPP loan. But under the single corporate group rule, an otherwise eligible business entity will receive no PPP assistance whatsoever if other entities with which it shares common ownership have already received $4 million in assistance.

28. As applied to business entities in the hospitality industry, the single corporate group rule is patently unlawful. It effectively restricts businesses' access to the PPP based on an affiliation-based factor, even though the CARES Act expressly provides that affiliation should not

11

be taken into account when assessing hospitality businesses' eligibility. There is thus an obvious and irreconcilable contradiction between the CARES Act and the single corporate group rule that renders the rule invalid. A regulation cannot stand where it is "[in]consistent with the congressional purpose" of its authorizing statute. *Morton v. Ruiz*, 415 U.S. 199, 237 (1974).

29.    Indeed, the single corporate group rule has the practical effect of shutting out of the PPP a vast number of hotels that Congress intended to help. Most hotels in the United States share common ownership with other hotel businesses. As of 2019, independent hotels that are not part of a larger ownership structure accounted for less than 40 percent of the hotel industry.[4] The single corporate group rule thus significantly narrows the number of hotels that can receive PPP assistance, in direct contravention of Congress's intent to expand the number of hotels whose workers would be protected by the PPP.

### d. Hotel Californian and the Other Affiliated Entities Receive Desperately Needed PPP Assistance

30.    Like so many other businesses in the hospitality industry, Hotel Californian's operations were significantly disrupted by the coronavirus pandemic, which jeopardized its financial survival. Between the second quarter of 2019 and the second quarter of 2020, Hotel Californian experienced a 78 percent drop in its gross receipts, putting it at severe risk of having to close its doors and lay off during the height of the pandemic the workers it employed.

31.    To avoid a total shutdown of its operations and keep its workers on payroll, Hotel Californian applied for a First Draw PPP loan. The SBA approved Hotel Californian's application

---

[4] *See* Julie Weed, *Independent Hotels Are Disappearing as Chains Grow*, N.Y. Times (Oct. 21, 2019), https://www.nytimes.com/2019/10/21/business/independent-hotels-airbnb-boutique-chains.html.

and disbursed a loan of $1,957,400 on April 14, 2020.  The SBA subsequently forgave Hotel Californian's First Draw loan in full.

32.     On January 20, 2021, Hotel Californian applied for a Second Draw PPP loan in the amount of $2 million.  At that time, the pandemic continued to threaten Hotel Californian's financial viability, and the Second Draw loan was essential to avoid mass layoffs and the shuttering of the hotel.  The loan was approved on February 8, 2021, and disbursed on February 16, 2021. The funds were used exclusively to cover Hotel Californian's payroll costs, making the full amount eligible for loan forgiveness.

33.     On January 20, 2021, the three other Affiliated Entities—Newport, Huntington, and Pine & Powell—also applied for Second Draw PPP loans in the amount of $2 million.  The three Affiliated Entities share a common majority owner with Hotel Californian, and as with Hotel Californian, the Second Draw loans were essential if the Affiliated Entities were to avoid mass layoffs and the closure of their hotels.

34.     Although all the Affiliated Entities submitted their loan applications on the same day, they were processed by the SBA at different speeds, and ultimately disbursed on different days:  February 5, 2021 (Pine & Powell); February 16, 2021 (Hotel Californian); February 16, 2021 (Newport); and March 25, 2021 (Huntington).

**e.  The SBA Denies Forgiveness of Hotel Californian's Loan**

35.     On June 7, 2022, Hotel Californian applied for forgiveness of its Second Draw loan. As a for-profit business entity that had received a First Draw loan; experienced a greater than 25 percent drop in revenue between 2019 and 2020; employed fewer than 300 workers; operated in

the hospitality industry; and used all of its loan proceeds for authorized purposes, Hotel Californian was entitled, by statute, to have its loan forgiven in full.

36.    On August 3, 2022, the SBA requested additional information about Hotel Californian's loan forgiveness application, and indicated that the agency was considering a full denial of forgiveness.  The SBA asserted that there were "Potential Affiliation Issues" with the loan because Hotel Californian, "together with its affiliates, may not meet SBA small business size standards and/or the PPP corporate maximum limits."  The letter identified Newport and Pine & Powell as potential affiliates.  The additional information that the SBA requested was extensive, and included, among other things, a "Comprehensive Corporate Organizational Chart showing relationships between affiliated entities and ownership listed, percentages owned, EIN/SSNs with detailed management listed for those who hold control;" and "2018 & 2019 complete, filed and signed Federal Income Tax returns for all entity affiliates."  On August 10, 2022, Hotel Californian provided the requested information.

37.    On August 25, 2022, the SBA informed Hotel Californian that the SBA had determined that Hotel Californian had been ineligible to receive the Second Draw loan and that, as a result, no portion of the loan would be forgiven.  The SBA based its incorrect determination on the fact that Hotel Californian, "together with its affiliates," received "more than $4,000,000 of 2nd draw PPP loans in the aggregate."  In particular, the SBA claimed that the owners of Hotel Californian "have ownership and/or leadership in a total of 3 affiliated entities with a total loan amount of $6 MM, which exceeds the PPP Second Draw Size Standard of $4 MM."[5]  Further, the SBA stated, inexplicably, that because two of the loans obtained by the Affiliated Entities (Hotel

---

[5] Hotel Californian is one of four affiliated entities that share a common owner.  In its denial letter, the SBA mistakenly stated that there were only three affiliated entities.

Californian and Newport) were disbursed on the same day, February 16, 2021, after another Affiliated Entity had already received a Second Draw Loan of $2 million on February 5, 2021, neither of the February 16 loans was eligible for forgiveness.

38.     In its denial letter, the SBA did not invoke the single corporate group rule by name, and instead made repeated reference to the SBA's affiliation rules.  However, the only provision in the SBA's PPP interim final rules that purports to establish a $4 million cap on PPP assistance is the single corporate group rule.  Thus, in substance, the SBA's decision was necessarily based on the single corporate group rule, which is applied based on a business's affiliation through common ownership with other PPP loan recipients.

39.     However, Congress waived the SBA's affiliation rules for businesses with an NAICS code that begins with 72, like Hotel Californian and the other Affiliated Entities.  The CARES Act clearly provides that, for businesses in the hospitality industry, their affiliation with other businesses is irrelevant to whether they are eligible to receive PPP assistance.  *See* 15 U.S.C. § 636(a)(36)(D)(iv)(I).  Yet the SBA denied Hotel Californian loan forgiveness, and claimed that Hotel Californian was ineligible to participate in the PPP, *because* of its affiliation with other PPP recipients.  The SBA's denial decision and its reliance on the single corporate group rule thus flatly contradict the affiliation waiver that Congress enacted in the CARES Act, and thus do not provide a lawful basis on which to deny loan forgiveness.

40.     Also on August 25, 2022, the SBA denied forgiveness for Newport's Second Draw loan on the same grounds that it denied Hotel Californian's.  Newport's Second Draw loan was the other of the "two loans . . . funded on the same day, February 16th, 2021," referenced in the SBA's denial letter to Hotel Californian.

**f.    Hotel Californian Unsuccessfully Appeals the SBA's Denial of Loan Forgiveness**

41.    On September 26, 2022, Hotel Californian timely filed an appeal of the SBA's determination that Hotel Californian was ineligible for the Second Draw Loan with the SBA's Office of Hearings and Appeals ("OHA").  In its appeal petition, Hotel Californian urged OHA to reverse the denial on the grounds that the single corporate group rule—the apparent basis for the SBA's decision—is an affiliation-based bar to PPP eligibility, and thus contrary to the CARES Act's waiver of the SBA's affiliation rules.  Indeed, the SBA itself had stated in its denial decision that it was refusing to grant the loan forgiveness to which Hotel Californian is entitled because of "Affiliation Issues."

42.    Instead of filing an opposition to Hotel Californian's appeal petition, on November 21, 2022, the SBA unilaterally withdrew its decision to deny Hotel Californian's application for loan forgiveness, and stated that the application would undergo additional review.  The SBA did not offer any explanation for why it was withdrawing the denial.

43.    On January 10, 2023, the SBA requested additional information from Hotel Californian about the Second Draw loan, which Hotel Californian promptly provided.

44.    Meanwhile, the SBA granted the other Affiliated Entities' Second Draw loan forgiveness applications.  On January 12, the SBA forgave $839,792.88 of Pine & Powell's loan— the full amount of forgiveness sought by Pine & Powell.  On August 31, 2023, the SBA also granted the vast majority of the amount of forgiveness that Huntington sought for its Second Draw loan.[6]  And on March 8, 2023, the SBA forgave Newport's $2 million Second Draw loan in full. Like Hotel Californian, Newport had appealed the denial decision it had received on August 25,

---

[6] Pine & Powell and Huntington did not use the full amount of their Second Draw loans on authorized expenditures, and so only sought forgiveness in the amounts equal to what they had spent for authorized purposes.

2022 from the SBA, and made the exact same arguments in its appeal petition as Hotel Californian had made, namely that the single corporate group rule is an unlawful, affiliation-based bar to PPP eligibility.  Instead of contesting Newport's appeal, the SBA forgave the loan, albeit without explanation.  Newport's loan, in all material respects, was identical to Hotel Californian's Second Draw loan.  The two loans were for the same amount and were disbursed on the exact same day, and Hotel Californian and Newport are both part of the same common ownership structure.

45.    Despite having forgiven Newport's identical Second Draw loan just a few weeks earlier, the SBA on March 28, 2023—over four months after it withdrew its previous denial—issued a new decision that again denied forgiveness for Hotel Californian's Second Draw loan. Remarkably, even though the SBA took far more time to issue its revised decision than it had taken to issue its original decision (and also took significantly longer than the 90 days allotted under the CARES Act for the SBA to render PPP forgiveness decisions, *see* 15 U.S.C. § 636m(c)(3)) the SBA's March 28 decision was, for all practical purposes, identical to the withdrawn August 25, 2022 denial.  The only difference between the two decisions is that the SBA dropped all references to affiliation, and replaced them with an explicit reference to the single corporate group rule, which it stated warranted a denial of forgiveness because of Hotel Californian's affiliation with other PPP loan recipients.  The SBA reasoned that Hotel Californian "is part of a corporate group [that] has received more than $4,000,000 of 2nd draw PPP loans in the aggregate;" that it had therefore been ineligible to receive the Second Draw loan; and that Hotel Californian thus could not be granted forgiveness.  Once again, the SBA was attempting to override by regulatory fiat the CARES Act's affiliation waiver.

46.    What's more, Huntington's Second Draw loan, which the SBA forgave nearly in the full amount applied for by the hotel, was disbursed on March 25, 2021.  This disbursement

date was more than a month after Hotel Californian's February 16, 2021 Second Draw loan disbursement date. The SBA's contention in its August 25, 2022 denial letter to Hotel Californian that Hotel Californian was ineligible for forgiveness because it received its Second Draw loan after the corporate group of which it is a part had already received $4 million in Second Draw assistance is therefore in significant tension with how the SBA has treated other loans, like Huntington's. In other words, even the SBA does not seem to be able to apply its lawless single corporate group rule with any consistency.

47.    Hotel Californian filed another appeal petition with OHA challenging the SBA's new denial decision on April 27, 2023. Hotel Californian renewed its arguments that the single corporate group rule is unlawful because it contradicts the plain text of the CARES Act. In addition, Hotel Californian noted that Newport's identical Second Draw loan had been forgiven weeks earlier, and that the SBA's decision to treat the two loans differently violated the "fundamental norm of administrative procedure [that] requires an agency to treat like cases alike." *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007).

48.    On August 18, 2023, OHA denied Hotel Californian's appeal. OHA concluded that because its "review is limited to determining whether final SBA loan review decisions are based on clear error of fact or law," it did "not have authority" to consider Hotel Californian's argument that the SBA's single corporate group rule violates the CARES Act. OHA also rejected Hotel Californian's arbitrary-and-capricious argument on the grounds that the SBA's decision to forgive Newport's loan while rejecting Hotel Californian's was supposedly "consistent with" the single corporate group rule.

49.    Pursuant to SBA regulations, Hotel Californian timely filed a request that OHA reconsider its decision, which the SBA opposed. OHA denied the request for reconsideration on

September 20, 2022, and Hotel Californian sought review by the SBA Administrator. On October 23, 2022, the Administrator informed Hotel Californian that she "decline[d] to exercise her discretion to review the decision issued in [Hotel Californian's] Appeal." Thus, by late October 2023—approximately one year and four months after it first filed its loan forgiveness application––Hotel Californian had exhausted its administrative remedies.

50.     As a result of SBA's denial of loan forgiveness, Hotel Californian has been forced to begin repaying the Second Draw loan, and has therefore been denied the critical pandemic relief that Congress intended to provide when it created the PPP.

## COUNT I

**(Administrative Procedure Act – Agency Action Abuse of Discretion, Contrary to Law, and in Excess of Statutory Authority or Short of Statutory Right)**

51.     Hotel Californian incorporates the preceding paragraphs by reference.

52.     The Administrative Procedure Act requires courts to set aside agency action that is "an abuse of discretion or otherwise not in accordance with law," or is "in excess of statutory . . . authority . . . or short of statutory right." 5 U.S.C. § 706(2)(A), (C). A decisionmaker "by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). "Regardless of how serious the problem an administrative agency seeks to address, . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) (quoting *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517 (1988)).

53.     The SBA's denial of the loan forgiveness to which Hotel Californian is entitled under the CARES Act is an abuse of discretion and not in accordance with law because the single

corporate group rule on which the denial is based flatly contradicts the CARES Act's waiver of

the SBA's affiliation rules for business entities in the hospitality industry.

a.  The CARES Act established broad and permissive eligibility criteria for "any business concern" to receive PPP funds.  15 U.S.C. § 636(a)(36)(D)(i).  A "business concern" is "a business entity organized for profit."  13 C.F.R. § 121.105(a)(1).

b.  For Second Draw loans, if a business concern had 300 or fewer employees, and had gross receipts during the first, second, third, or fourth quarters of 2020 that represented at least a 25 percent reduction from the gross receipts of the same quarter in 2019, the concern is generally eligible for Second Draw PPP assistance.  *See* 15 U.S.C. § 636(a)(37)(A)(iv).

c.  An eligible business concern was entitled to receive up to $2 million in Second Draw PPP assistance.  *See* 15 U.S.C. § 636(a)(37)(C).

d.  When determining a business concern's size for loan eligibility purposes, the SBA typically takes into account whether the concern is affiliated with other entities. *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20817, 20818 (April 15, 2020) ("In most cases, a borrower will be considered together with its affiliates for purposes of determining eligibility for the PPP."); *see also* 13 C.F.R. § 121.301(a)(2) ("The size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever [sic] is higher.").

20

e.  However, for the PPP, the CARES Act expressly waived application of these affiliation rules—and "any successor regulation"—for certain businesses, including businesses "assigned a North American Industry Classification System code beginning with 72."  15 U.S.C. § 636(a)(36)(D)(iv).

f.  Hotel Californian is a business concern that was eligible for a Second Draw loan because it has been assigned a NAICS code beginning with 72, and at the time it applied for the loan, it had 300 or fewer employees and had experienced a 78 percent reduction in gross receipts between the second quarter of 2019 and the second quarter of 2020.

g.  Because Hotel Californian was eligible for a Second Draw loan, and used the loan proceeds for authorized purposes, it is entitled to full forgiveness of its $2,000,000 Second Draw loan.

h.  The SBA refused to forgive Hotel Californian's Second Draw loan.  The SBA invoked the agency's single corporate group rule and incorrectly determined that because the Affiliated Entities had already received over $4,000,000 in Second Draw loans, Hotel Californian was ineligible for a Second Draw loan.

i.   The SBA's single corporate group rule is patently unlawful as applied to Hotel Californian.  It directly contradicts Congress's waiver of the SBA's affiliation rules for businesses, like Hotel Californian, that have a NAICS code starting with 72. *See* 15 U.S.C. § 636(a)(36)(D)(iv)(I).

j.  The SBA's attempt to override the plain text of the CARES Act is contrary to law and therefore an abuse of discretion in violation of the Administrative Procedure Act.

## COUNT II
### (Declaratory Judgment Act)

54.  Hotel Californian incorporates the preceding paragraphs by reference.

55.  The Declaratory Judgment Act allows this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," in "a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201.  "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." *Id.* § 2202.  The Declaratory Judgment Act thus gives this Court the power to grant a declaratory judgment and to grant injunctive relief based on the declaratory judgment.

56.  For the reasons set forth above, Hotel Californian is entitled to a declaration that (a) SBA's refusal to forgive Hotel Californian's Second Draw loan violated the CARES Act and the Administrative Procedure Act, and (b) Hotel Californian is entitled to full forgiveness of the Second Draw loan.

## REQUESTS FOR RELIEF

1.  Hotel Californian requests that this Court:

a.  Declare that the single corporate group rule violates the APA; hold it invalid, contrary to law, arbitrary and capricious, and otherwise unlawful; and set it aside;

b. Enter a declaratory judgment that the SBA violated the CARES Act when it denied forgiveness of Hotel Californian's Second Draw Loan, and that Hotel Californian is entitled to full forgiveness of its Second Draw Loan;

c. Award Hotel Californian the amount of money that Hotel Californian has wrongfully been forced to repay to the SBA for Hotel Californian's Second Draw loan;

d. Enjoin the SBA from requiring Hotel Californian to make additional repayments of the Second Draw loan; and

e. Award such other and further additional relief as is just and proper.

Dated:  March 14, 2024                    Respectfully submitted,

*/s/ Christian Dibblee*
Christian Dibblee (D.C. Bar No. 90002557)
Blake Lanning (D.C. Bar No. 1766002)
(Application for admission forthcoming)
Douglas Colby (D.C. Bar No. 1735932)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9672
cdibblee@gibsondunn.com
blanning@gibsondunn.com
dcolby@gibsondunn.com

*Attorneys for 35 State Street Hotel Partners, LLC*
*(d/b/a Hotel Californian)*