

**SMALL BUSINESS ADMINISTRATION
WASHINGTON, DC 20416**

08/25/2022

VIA FORGIVENESS PLATFORM



East West Bank

Re: PAYCHECK PROTECTION PROGRAM FINAL SBA LOAN REVIEW DECISION
   Borrower: 35 STATE STREET HOTEL PARTNERS, LLC
   SBA Loan No.: ▮▮▮▮▮▮▮▮▮
   Approved Loan Amount: $2,000,000.00
   Loan Approval Date: 02/08/2021
   Lender Forgiveness Decision Submission Date: 06/07/2022
   Lender Forgiveness Decision Amount: $2,000,000.00
   SBA Final Forgiveness Amount: $ 0.00

*Dear:* ▮▮▮▮▮▮▮

The U.S. Small Business Administration (SBA) has completed its review of the above-referenced Paycheck Protection Program (PPP) loan.  Based on a review of lender and/or borrower submissions, and consideration of the facts and circumstances, SBA has made a final SBA loan review decision.

---

**SBA has determined that the borrower was ineligible for the PPP loan amount. The reason(s) for SBA's decision is as follows:**

**After a review of the documentation provided, the SBA concludes that the Borrower business, together with its affiliates, has received more than $4,000,000 of 2nd draw PPP loans in the aggregate.**

**It is verified that the owners of the borrowing entity 35 STATE STREET HOTEL PARTNERS, LLC have ownership and/or leadership in a total of 3 affiliated entities with a total loan amount of $6MM, which exceeds the PPP Second Draw Size Standard of $4MM. Each of the three entities received a 2nd draw PPP loan in the amount of $2MM. The first of the three $2MM loans was funded February 5, 2021 and is eligible for full forgiveness. The remaining two loans of $2MM each funded on the same day, February 16th, 2021, exceeding the $4MM aggregate threshold and thereby rendering both loans ineligible.**

---

SBA_000001

Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate. Additional details regarding the forgiveness payment amount (if any) will be provided in a Notice of Paycheck Protection Program Forgiveness Payment.

Within 5 business days of the date of this letter, you must provide a copy of this final SBA loan review decision to the borrower.

You must continue to service the loan. You must notify the borrower that the remaining balance of the loan after application of the forgiveness payment (if any) must be repaid on or before the maturity date. The notification must include the date on which the first principal and interest payment is due and the amount of the borrower's regular payment. As set forth below, if the borrower files a timely appeal with SBA's Office of Hearings and Appeals (OHA), the deferment period of the loan will be extended pursuant to 13 CFR § 134.1211.

Pursuant to 13 CFR § 134.1201(b), the borrower has the right to appeal to SBA's Office of Hearings and Appeals a final SBA loan review decision that the borrower:

1. was ineligible for a PPP loan;
2. was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;
3. is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; and/or
4. is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.

Any appeal must be made in accordance with the SBA Rules of Practice for Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program, located at 13 CFR § 134.1201, *et seq.*, including but not limited to the following:

• An appeal petition must be filed with SBA's Office of Hearings and Appeals (OHA) within 30 calendar days after the borrower's receipt of the final SBA loan review decision. 13 CFR § 134.1202(a). To file and manage an appeal of a final SBA loan review decision with OHA, refer to Office of Hearings and Appeals.
• Borrower must include, among other things, a copy of this final SBA loan review decision with its appeal. 13 CFR § 134.1204(a).
• Borrower must provide you (the lender) with a copy of the timely appeal petition filed with OHA so that you can extend the deferment period of the loan. 13 CFR § 134.1202(b).
• An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a federal district court. 13 CFR § 134.1201(d).

Thank you for your cooperation.

Sincerely,

Office of Capital Access
U.S. Small Business Administration

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Michael D. Bopp
Direct: +1 202.955.8256
Fax: +1 202.530.9648
MBopp@gibsondunn.com

September 26, 2022

U.S. Small Business Administration
Office of Hearings and Appeals
409 Third St., SW., Eighth Floor
Washington, DC 20416

Re:    Appeal of Final Loan Review Decision for SBA Loan No. ▮▮▮▮▮▮

To whom it may concern:

    We write to appeal the Final Loan Review Decision (the "Decision") issued by the Small Business Administration ("SBA") on August 25, 2022, which determined, incorrectly, that 35 State Street Hotel Partners, LLC (d/b/a "Hotel Californian") was ineligible for the $2 million Second Draw loan it received under the Paycheck Protection Program ("PPP"). *See* Ex. A. That Decision was based on a limitation on loan eligibility that the SBA created for First Draw PPP loans, then changed for Second Draw loans, then interpreted in a way that contradicts the statute authorizing the PPP. The so-called "single corporate group" ("SCG") limitation is unlawful and cannot serve as a barrier to Hotel Californian's loan eligibility or forgiveness.

    The SBA's Decision is incorrect as a matter of law and, therefore, under the applicable standard of review, must be reversed. *See* 13 C.F.R. § 134.1210. Hotel Californian acknowledges that it shares common ownership with three other entities that obtained Second Draw PPP loans; that, in the aggregate, it and its affiliates obtained $8 million in PPP loans; and that this amount exceeds the $4 million cap the SBA has attempted to impose administratively on how much members of an SCG may obtain in PPP assistance. But the SBA's SCG limitation is patently unlawful as applied to Hotel Californian. It directly contradicts Congress's waiver of the SBA's affiliation rules for businesses, like Hotel Californian, that have a NAICS code starting with 72. Further, even if the SCG limitation were consistent with the CARES Act (it is not), Hotel Californian would still be entitled to forgiveness of its loan so that it and its affiliates at least obtain the $4 million in PPP forgiveness that the SBA's own rules allow. The SBA staff's conclusion to the contrary is arbitrary and capricious, and inconsistent with the purpose of the CARES Act.

    Simply put, imposing new affiliation barriers on loan eligibility severely harms the many hotels and restaurants that relied in good faith on Congress's waiver of the affiliation rules, and depended on PPP loans to survive the pandemic. The SBA's decision to do so has no basis in law, and must be set aside. Hotel Californian is thus entitled to forgiveness of its $2 million PPP loan.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

U.S. Small Business Administration
September 26, 2022
Page 2

## BACKGROUND

Hotel Californian is a separately operated, single hotel property in Santa Barbara, California, at which, at the time it applied for the Second Draw PPP loan, it employed 63 individuals.[1]  *See* Ex. B.  Like so many other businesses in accommodations and food services industries, Hotel Californian's operations were significantly disrupted by the coronavirus pandemic, which jeopardized its financial survival.  Between the second quarter of 2019 and the second quarter of 2020, Hotel Californian experienced a 78 percent decline in its gross receipts, putting it at severe risk of having to close its doors and leave its employees without work.  *See id.*

This is exactly the type of business the PPP was designed to assist.  Not surprisingly, Hotel Californian applied for a First Draw PPP loan.  It was in the amount of $1,957,400. *See* Ex. C  The first-draw loan was disbursed on April 14, 2020, and subsequently forgiven in full.

On January 20, 2021, Hotel Californian applied for a Second Draw PPP loan in the amount of $2 million.  *See* Ex. B.  At that time, the pandemic continued to threaten its financial viability, and the Second Draw loan was essential to avoid mass layoffs and the shuttering of the hotel.  The loan was approved on February 8, 2022, and disbursed on February 16, 2021.  *See* Ex. A.  The funds were used exclusively to cover Hotel Californian's payroll costs, making the full amount eligible for loan forgiveness.  *See* 15 U.S.C. § 636(a)(37)(J); Ex. D.

Also on January 20, 2021, three other businesses that operate separate hotel properties—WRC Newport, LLC; WRC Huntington, LLC; and Pine & Powell Partners, LLC (collectively, with Hotel Californian, the "Affiliated Entities")—with which Hotel Californian shares a common owner, applied for Second Draw PPP loans in the amount of $2 million each.[2]  *See* Ex. E.  Although the loan applications were all submitted on the same day, they appear to have been processed by the SBA at different speeds, and ultimately

---

[1] On its Second Draw application, Hotel Californian mistakenly stated that it had 173 employees at the time it submitted the application.  *See* Ex. B.  It in fact employed 63 individuals at that time.  *See* Ex. D.  This error does not alter Hotel Californian's eligibility for the Second Draw loan.

[2] Michael Rosenfeld holds 61 percent equity ownership of Hotel Californian and owns 90 percent of each of the other three Affiliated Entities.  On its Second Draw application, Hotel Californian noted that it shared a common owner with other businesses, and listed Mr. Rosenfeld as a 61 percent stake owner.  *See* Ex. B.  The applications for the other Affiliated Entities also all acknowledged Mr. Rosenfeld's ownership and the fact that they share a common owner with other businesses.  *See* Ex. E.  Hotel Californian neglected to list out the other Affiliated Entities by name on its application because it believed that, as a NAICS 72 entity, it was not required to do so.  We do so here.  Aside from their common ownership, the Affiliated Entities are unrelated to one another.

**GIBSON DUNN**

U.S. Small Business Administration
September 26, 2022
Page 3

disbursed on different days:  February 16, 2021, March 25, 2021, and February 5, 2021, respectively.  *See* Ex. F.

On June 7, 2022, Hotel Californian applied for forgiveness for the Second Draw loan. *See* Ex. D.  On August 3, the SBA requested additional information about the loan, and indicated that it was considering a full denial of the application.  *See* Ex. G.  In particular, the SBA's August 3 letter claimed that there were "Potential Affiliation Issues" with the loan because Hotel Californian, "together with its affiliates, may not meet SBA small business size standards and/or the PPP corporate maximum limits."  *Id*. at 2.  The letter identified Pine & Powell Partners, LLC and WRC Newport, LLC as potential affiliates.  *Id*.  The list of additional information the SBA requested was extensive, and included, among other things, a "Comprehensive Corporate Organizational Chart showing relationships between affiliated entities and ownership listed, percentages owned, EIN/SSNs with detailed management listed for those who hold control;" and "2018 & 2019 complete, filed and signed Federal Income Tax returns for all entity affiliates."  *Id*. at 3.   On August 10, Hotel Californian provided the requested information.

On August 25, the SBA communicated its determination that Hotel Californian had been ineligible to receive the Loan and that, as a result, no portion of the Loan would be forgiven.  *See* Ex. A.  The SBA based this incorrect determination on the fact that Hotel Californian, "together with its affiliates," received "more than $4,000,000 of 2nd draw PPP loans in the aggregate."  *Id*.  In particular, the SBA asserted that the owners of Hotel Californian "have ownership and/or leadership in a total of 3 affiliated entities with a total loan amount of $6 MM, which exceeds the PPP Second Draw Size Standard of $4 MM."  *Id*. Further, the SBA claimed, inexplicably, that because two of the loans obtained by the Affiliated Entities, including Hotel Californian's loan, were disbursed on the same day, February 16, 2021, after another Affiliated Entity had already received a Second Draw Loan for $2 million on February 5, 2021, neither of the February 16 loans is eligible for forgiveness.  That means the SCG of which Hotel Californian is a part is being denied access to even the $4 million in forgiveness the SCG limitation purports to allow for affiliated entities.

In the Decision, the SBA did not invoke the SCG limitation by name, and instead made repeated reference to the SBA's affiliation rules.  However, the only provision in the SBA's Second Draw rules that purports to establish a $4 million cap on loans is the SCG limitation.  In effect, the Decision relies on the SBA's affiliation rules to deny Hotel Californian any Second Draw loan forgiveness.  This conclusion is squarely at odds with the statutory waiver of affiliation rules for companies, like Hotel Californian, with an NAICS code that begins with 72 ("Statutory Affiliation Waiver") and warrants reversal.  *See* 15

**GIBSON DUNN**

U.S. Small Business Administration
September 26, 2022
Page 4

U.S.C. § 636(a)(36)(D)(iv)(I).  Simply put, the SBA's affiliation rules cannot be a bar on Hotel Californian receiving Second Draw loan proceeds because they have been waived.

That said, even if the SCG limitation is the basis for the SBA's conclusion, the Decision still should be reversed.  The SCG limitation is *ultra vires*, and cannot provide grounds for the SBA's denial.  As applied to hotel businesses like Hotel Californian, the SCG eligibility restriction directly contradicts a central feature of Congress's relief plan for businesses and workers whose livelihoods were threatened by the pandemic; namely the waiver of the SBA's affiliation rules.  For all practical purposes, the SCG limitation is an affiliation-based restriction on a business concern's eligibility for PPP assistance, and thus introduces into the PPP an eligibility feature that Congress expressly waived for hotels and restaurants.  Moreover, even if the SBA could lawfully apply the SCG limitation, its decision to fully deny Hotel Californian's forgiveness application, even though the Affiliated Entities have not received anywhere close to $4 million in loan forgiveness, is arbitrary.  In other words, even if the SBA could apply its SCG limitation (it cannot), the Affiliated Entities would at least be entitled to $4 million in Second Draw loan forgiveness.

## ARGUMENT

### *Hotel Californian Was Eligible to Receive $2 Million in Second Draw PPP Assistance*

The CARES Act established broad and permissive eligibility criteria for "any business concern" to receive PPP funds.[3]  15 U.S.C. § 636(a)(36)(D)(i); *see also DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 746 (6th Cir. 2020) ("The term 'any' carries an expansive meaning. . . That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible.").  The primary limitation on eligibility for PPP loans is a business concern's size, as measured by employee headcount and gross receipts.  *See* 15 U.S.C. § 636(a)(36)(D)(i).  For Second Draw PPP loans, if the business concern has 300 or fewer employees, and had gross receipts during the first, second, third, or fourth quarters of 2020 that represent at least a 25 percent reduction from the gross receipts of the same quarter in 2019, the concern is generally eligible for second-draw PPP assistance.  *See* 15 U.S.C. § 636(a)(37)(A)(iv).  An eligible business concern could receive up to $2 million in PPP assistance in Second Draw loans. *See* 15 U.S.C. § 636(a)(37)(C); *see also* Small Business Administration, Paycheck Protection Program Loans Frequently Asked Questions 11 (July 29, 2021) ("The $10 million (or $2 million for a Second Draw PPP Loan) maximum loan amount limitation applies to each eligible business entity.").

---

[3] For purposes of SBA programs, "business concern" refers to "a business entity organized for profit."  13 C.F.R. § 121.105(a)(1).

**GIBSON DUNN**

U.S. Small Business Administration
September 26, 2022
Page 5

When determining a business concern's size for loan eligibility purposes, the SBA typically takes into account whether the concern is affiliated with any other entities. *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20817, 20818 (April 15, 2020) ("In most cases, a borrower will be considered together with its affiliates for purposes of determining eligibility for the PPP."); *see also* 13 C.F.R. § 121.301(a)(2) ("The size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher."); *Concord Crossroads, LLC v. Hum. Cap. Res. & Concepts, Inc.*, 2020 WL 9367543, at *6 (E.D. Va. Sept. 2, 2020) (affiliation rules are pertinent for "size determination purposes"). However, for the PPP, Congress expressly waived application of these affiliation rules for certain businesses, including businesses "assigned a North American Industry Classification System code beginning with 72." 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Under this statutory scheme, Hotel Californian was plainly eligible to receive a Second Draw PPP loan up to the maximum amount of $2 million. It is a business concern that had 63 employees at the time it applied for a Second Draw loan, and that experienced a 78 percent reduction in gross receipts from the second quarter of 2019 to the second quarter of 2020. *See* Ex. C. Moreover, while it is affiliated through common ownership with three other entities that, in the aggregate, employ more than 300 people, Hotel Californian has a NAICS code of 721110. *See id.* That means its affiliation with the other entities is irrelevant to its PPP eligibility. *See Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, 86 Fed. Reg. 3712, 3714 (Jan. 14, 2021) ("Under the CARES Act, any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) . . . is eligible . . . [The] SBA's affiliation rules (13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72."). Further, as an "eligible recipient" that spent the full amount of its Second Draw PPP loan on allowable expenditures, Hotel Californian is entitled to full forgiveness of the loan amount. *See* 15 U.S.C. § 636m(b).

**The SBA's Basis for Denying Loan Forgiveness Is Unlawful**

Based on a rule found nowhere in the CARES Act, that it was not authorized to promulgate, and that directly contradicts Congress's Statutory Affiliation Waiver, the SBA reached a different and erroneous conclusion. Under the SBA's rules, businesses "are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent." 86 Fed. Reg. 3692, 3702 (Jan. 14, 2021) (definition of "single corporate group" for first-draw loans); *see Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, 86 Fed. Reg. 3712, 3720 (Jan. 14, 2021) (adopting same definition of "single corporate group" for second-draw loans). Under the SCG rule, which

**GIBSON DUNN**

U.S. Small Business Administration
September 26, 2022
Page 6

was designed specifically to limit access to PPP loans, business entities that are part of an SCG cannot, in the aggregate, receive more than $4 million in PPP loans. *See* 86 Fed. Reg. at 3720. The SBA's Office of Capital Access has chosen to interpret the SCG rule in a way that allows it to conclude Hotel Californian is entitled to $0.00 in loan forgiveness and the Affiliated Entities less than $1 million in Second Draw loan forgiveness in total. *See* Ex. A.

In brief, the SCG limitation is completely unmoored from—and contradicts—the authorizing statute's eligibility provisions. It is thus unlawful, and can provide no basis for the SBA to deny Hotel Californian's loan forgiveness application.

To begin with, the SBA does not have authority to promulgate regulatory restrictions that override the CARES Act's more specific eligibility provisions. *See Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020). It is black letter law that "[r]egulations cannot contradict their animating statutes." *Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*, 941 F.3d 1288, 1299 (11th Cir. 2019). Yet the SBA's SCG limitation does exactly that, flatly contravening Congress's waiver of the affiliation rules for NAICS 72 entities.

As noted, the SCG limitation turns on majority ownership. *See* 86 Fed. Reg. 3692, 3702. That same criterion is also a determining factor for application of the SBA's affiliation rules. While there are other factors that also satisfy the affiliation rules, the rules treat common majority ownership shared by two or more entities as sufficient to establish affiliation, which, depending on the size of the affiliated entities, can bar them from receiving an SBA loan. *See* 13 C.F.R. § 121.103(c) ("A person . . . that owns, or has the power to control, 50 percent or more of a concern's voting stock . . . controls or has the power to control the concern."). Likewise, for business concerns like Hotel Californian that are affiliated with entities that collectively applied for and previously received more than $4 million in Second Draw PPP loans, the SCG limitation treats that affiliation as an absolute bar to their access to the program. Thus, while, in its interim final rules, the SBA may label the SCG rule as a restriction only on the amount entities can borrow, as-applied and in practical effect the rule is an affiliation-based bar to loan eligibility for many business concerns.

There is no way to reconcile that sort of rule with the statutory text. The CARES Act provides that the "provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived *with respect to eligibility* for a covered loan for . . . any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72." 15 U.S.C. § 636(a)(36)(D)(iv)(I) (emphasis added). As the SBA itself has explained, that means the "SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS

**GIBSON DUNN**

U.S. Small Business Administration
September 26, 2022
Page 7

code beginning with 72." Small Business Administration, Paycheck Protection Program Loans Frequently Asked Questions 11 (July 29, 2021). Despite this clear statutory command, the SBA has sought to reintroduce an affiliation-based bar to eligibility, effectively nullifying aspects of Congress's complete and unqualified waiver of the affiliation rules, which, notably, applied not only to the SBA's existing affiliation rules, but also to any "successor regulations," such as the SBA's PPP interim final rules, which announce the SCG limitation. It stands to reason that Congress added the "successor regulation" limitation because it did not want the SBA to do what it is trying to do now; namely, bar hotels and restaurants from participation in the program because of their affiliation with other hotels and restaurants.

The SBA's denial of Hotel Californian's loan forgiveness application itself makes abundantly clear that the SCG rule and the SBA's affiliation rules are, effectively, one and the same. The denial letter expressly invokes Hotel Californian's affiliation with other borrowers, in terms drawn directly from the SBA's waived affiliation rules, noting that the hotel's owners "have *ownership and/or leadership* in a total of 3 *affiliated* entities with a total loan amount of $6 MM, which exceeds the PPP Second Draw *Size Standard* of $4 MM." Ex. A (emphases added); *see also* 13 C.F.R. § 121.201 ("The size standards . . . indicate[] the maximum allowed for a concern and its affiliates to be considered small."); 13 C.F.R. § 121.103(a)(2) ("SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships, in determining whether affiliation exists."). Similarly, the SBA's August 3 pre-determination letter indicated that the SBA was looking at "Potential Affiliation Issues," and requested information about whether the Affiliated Entities share common management or are controlled by the same entity—again, all factors that are drawn directly from the SBA's waived affiliation rules. *See* Ex. D.

Thus, however the SCG limitation may be labelled in the regulations, the SBA's interpretation of and the practical consequences of the rule make clear that the limitation is simply a repackaged version of the affiliation rules Congress waived for NAICS 72 entities. It is thus unlawful, and cannot serve as a basis for denying Hotel Californian's loan forgiveness application. *See Djie v. Garland*, 39 F.4th 280, 285 (5th Cir. 2022) ("When a regulation attempts to override statutory text, the regulation loses every time—regulations can't punch holes in the rules Congress has laid down.").

In support of its clear "usurpation of Congressional authority to determine which business [sic] are eligible for PPP funds," *Archdiocese of Santa Fe*, 615 B.R. at 656, the SBA claimed in its interim final rules creating the SCG limitation that the CARES Act "specif[ies] a 'maximum'—but not a minimum—loan amount," and thus asserted that it could fix a

**GIBSON DUNN**

U.S. Small Business Administration
September 26, 2022
Page 8

different cap on how much in PPP assistance an SCG receives.  86 Fed. Reg. 3692, 3702 n.59.  But that justification ignores and undermines basic features of the statutory scheme.

For one thing, the CARES Act makes PPP loans available to "business concerns," a term which, as noted, refers to single, distinct legal entities, not to a group of affiliated entities.  *See* 13 C.F.R. § 121.105(a)(1); *see also* Small Business Administration, Paycheck Protection Program Loans Frequently Asked Questions 11 (July 29, 2021)  ("[I]f each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees (or 300 employees for a Second Draw PPP loan) is permitted to apply for a separate PPP loan.").  The SCG limitation therefore is not a cap on how much a business concern can receive in PPP loans, but rather a wholesale exclusion from the program if, as happened to Hotel Californian, the business concern happens to be affiliated with other business concerns that have already taken out separate loans.

Moreover, the statute is clearly designed to cover with PPP assistance as much of a business concern's payroll costs as is reasonably possible.  In calculating the Second Draw loan amount for NAICS 72 entities, the SBA is to multiply the average monthly payroll costs of the business concern for the one-year period preceding the loan application by 3.5, subject to a $2 million limit.  *See* 15 U.S.C. § 636(a)(37)(C)(iv).  There is nothing in the statute providing the SBA with separate authority to further revise this carefully structured formula by introducing new maximums unrelated to payroll costs.[4]

---

[4] Indeed, many courts have recognized that the SBA has no authority to create *any* new restrictions on PPP eligibility that are not found in the CARES Act or Congress's later amendments to that statute.  *See, e.g.*, *DV Diamond Club of Flint*, 960 F.3d at 746–47 ("[T]he [CARES] Act's specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation. That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible . . . Finally, by specifying 'any business concern,' Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances."); *Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1056 (E.D. Wis. 2020) (regulatory exclusion of certain businesses from PPP eligibility exceeded SBA's authority); *In re Skefos*, 2020 WL 2893413, at *10 (Bankr. W.D. Tenn. June 2, 2020) ("Congress expressed its intent through the CARES Act and the PPP that emergency support be provided to American workers facing the loss of income . . . in the face of the worst global pandemic in more than 100 years. Within that framework, the Administrator was not authorized to exclude American workers on the basis that they happened to be employed by a debtor in bankruptcy."); *In re Roman Cath. Church of Archdiocese of Santa Fe*, 615 B.R. 644, 655 (Bankr. D.N.M. 2020) ("The CARES Act directly addresses the PPP eligibility requirements. It charged [the SBA] with issuing 'regulations to carry out this title....' Section 1114. [The SBA] had no authority under this charge to change the eligibility requirements.").  The SCG limitation is, in all material respects, the same as these other restrictions on PPP eligibility that courts have struck down.  It bars from eligibility businesses that, like Hotel Californian, clearly are within the class of entities that Congress intended to aid through the CARES Act.

**GIBSON DUNN**

U.S. Small Business Administration
September 26, 2022
Page 9

"Regardless of how serious the problem an administrative agency seeks to address, . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) (quoting *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517 (1988)). However worthy the goal of the SCG limitation to "preserve finite appropriations for PPP loans" may be, the SBA cannot accomplish it by excluding from the program a NAICS 72 business concern that is clearly eligible, based on a factor that Congress expressly said should not apply to NAICS 72 entities. 86 Fed. Reg. 3692, 3702 n.59. Given its practical consequences, the SCG limitation is nothing more than an "end run around th[e] clear statutory language" of the Statutory Affiliation Waiver. *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1225 (10th Cir. 2017). Put slightly differently, the SBA clearly could not enact rules expressly purporting to bar NAICS 72 entities from the PPP based on affiliation, yet the SCG limitation "has this precise effect," putting it crosswise with the CARES Act. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91–92 (2002). It thus must be set aside, and cannot support the SBA's Decision. *See* 5 U.S.C. § 706(2)(A).

### *Hotel Californian Is At Least Entitled to Partial Forgiveness*

Even if the SCG limitation were lawful (it is not), the SBA's decision to apply it to deny Hotel Californian's forgiveness application in its entirety would still be arbitrary and capricious, and therefore invalid.[5] *See* 5 U.S.C. § 706(2)(A). The SCG limitation allows an SCG to take out up to $4 million in Second Draw loans. *See* 86 Fed. Reg. 3692, 3702. As of the time Hotel Californian's application for forgiveness was denied, none of the Affiliated Entities had received any loan forgiveness. And the SBA's denial letter indicates that it plans to allow for only $839,792.88 in total forgiveness for the Affiliated Entities because Hotel Californian's loan was disbursed on the same day as the loan of another of the Affiliated Entities, and thus both exceeded the $4 million cap simultaneously. But this result does not follow from the regulatory text, and there is no justification the SBA offered—or could offer—for denying the Affiliated Entities the full $4 million in loan forgiveness to which they are entitled even under the SBA's unlawful rules.[6]

---

[5] The SCG limitation is itself arbitrary and capricious because it has no meaningful relation to the purpose of the CARES Act's PPP provisions. *Cf. In re Skefos*, 2020 WL 2893413, at *10 ("In order to implement a Congressional program intended to protect American workers from unemployment and loss of health insurance, SBA arbitrarily eliminated all workers employed by debtors in bankruptcy and all workers employed by entities whose owners are debtors in bankruptcy.").

[6] Pine & Powell Partners, LLC has only applied for $839,792.88 in forgiveness for the loan disbursed on February 5, 2021 because it did not use a full 60 percent of the loan amount for payroll costs. *See* Ex. F. The SBA's suggestion that the Pine & Powell Partners, LLC's loan forgiveness application will be approved in full while the other Affiliated Entities' applications will not thus means that, if the SBA's mistaken determination is not reversed, the Affiliated Entities will, in the aggregate, only receive $839,792.88 in loan forgiveness.

**GIBSON DUNN**

U.S. Small Business Administration
September 26, 2022
Page 10

For starters, this new bar to eligibility, which is not found in the SBA's interim final rules or any other guidance of which we are aware, appears to have been created by the SBA's Office of Capital Access. It would mean that the Affiliated Entities (and likely many other NAICS code 72 loan recipients) would be deemed eligible for far less than $4 million in Second Draw loans than the SCG limitation purports to allow. Indeed, under this staff-created bar, if each of the Affiliated Entities' Second Draw loans had been disbursed on the same day, they would have been eligible for $0.00 in loan forgiveness. Moreover, according to the logic of the Decision, under that circumstance the Affiliated Entities would be ineligible for *any* Second Draw loans, effectively obliterating the purpose behind the Statutory Affiliation Waiver for hotels and restaurants devastated by COVID.

Relatedly, the SBA's decision does nothing to advance the agency's stated purpose behind the SCG limitation. According to the SBA, the purpose of the SCG limitation is to "preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers" by setting an "aggregate limitation on loans to a single corporate group." 86 Fed. Reg. 3692, 3702 n.59. The unwritten and unexplained rule applied in the decision letter, by contrast, caps the Affiliated Entities' share of Second Draw PPP funds well-below the $4 million maximum that, in the aggregate, the SBA says is appropriate. Moreover, the SBA's apparent reason for doing so has nothing to do with the Affiliated Entities' eligibility for the program or the goal of preserving finite resources. As noted above, the Affiliated Entities all applied for Second Draw loans on the same day. The SBA just happened to disburse two of them simultaneously, while processing the other two at different speeds. Making that sort of clerical coincidence the determining factor for whether a business, beleaguered by the pandemic, can obtain the financial relief Congress intended is the very definition of an arbitrary and capricious decision. *See Judulang v. Holder*, 565 U.S. 42, 56 (2011) (agency decision is arbitrary and capricious where the facts on which it is based are "as extraneous to the merits of the case as a coin flip would be").

The CARES Act clearly allows the SBA, in certain cases, to grant a business concern partial forgiveness of its loan, even if full forgiveness is not available. *See* 15 U.S.C. § 636m(b). PPP loan forgiveness is not an all or nothing proposition. Further, receipt of PPP funds "*in excess* of the amount permitted" by the SBA's rules is "regarded as a use of PPP funds for unauthorized purposes," and will not be forgiven 86 Fed. Reg. 3692, 3702 (emphasis added). "If [a borrower] use[s] PPP funds for unauthorized purposes, SBA will direct [it] to repay *those amounts*." *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20814 (April 15, 2020) (emphasis added). Thus, even if the SCG limitation were lawful, forgiveness should still be denied only insofar as the Affiliated Entities, in the aggregate, expended funds above the $4 million cap, as it is only those amounts that are in excess of what is permitted by the SBA's rules. The SBA's Decision, by contrast, denied Hotel Californian's loan forgiveness application in its entirety,

# GIBSON DUNN

U.S. Small Business Administration
September 26, 2022
Page 11

and indicated that the SBA intends to deny forgiveness for the other loan disbursed on February 16, 2021 as well, which would—inconsistent with the SBA's own rules—treat as unauthorized expenditures amounts that fall within the $4 million cap.

      In sum, for the reasons given previously, Hotel Californian is plainly entitled to full forgiveness of its Second Draw loan.  But even if the SCG limitation were lawful, and the SBA were to conclude that full forgiveness is not appropriate, partial forgiveness of the two loans disbursed on February 16, 2021 would be warranted to ensure that the Affiliated Entities, in the aggregate, obtain the full $4 million of relief to which they are entitled under the SBA's rules.[7]

## CONCLUSION

      For the foregoing reasons, we respectfully ask the SBA to reverse the Final Loan Review Decision denying Hotel Californian's loan forgiveness application.  Please contact me (+1 (202) 955-8256 or mbopp@gibsondunn.com) if you have any questions regarding this appeal petition or if you require additional information.


Sincerely,


GIBSON, DUNN & CRUTCHER LLP


Michael D. Bopp
Partner


Attachment

---

[7] How the SBA should calculate an appropriate partial forgiveness amount in cases such as this is not explained in the SBA's rules, which, as noted, say nothing about what occurs when the SBA, through happenstance, disburses two loans on the same day.



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

OMB Control No.: 3245-0417
Expiration Date: 7/31/2021

| Check One: | ☐ Sole Proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC ☐ Independent Contractor ☐ Self-Employed Individual ☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization ☐ 501(c)(19) veterans organization ☐ Housing cooperative ☐ Tribal Business ☐ Other | | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|---|---|
| | | | Hotel Californian | 2010 |

| Business Legal Name | NAICS Code |
|---|---|
| 35 State Street Hotel Partners, LLC | 721110 |

| Business Address (Street, City, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| Property Physical Address: 36 State St, Santa Barbara, CA 93101-4983 Entity Mailing Address: 1999 Avenue of Stars, Suite 2850, Los Angeles, CA 90067-4627 | | |
| | Primary Contact | Email Address |
| | | |

| Average Monthly Payroll: | $782,980.62 | x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000): | $2,000,000.00 | Number of Employees (including affiliates, if applicable; may not exceed 300): | 173.00 |
|---|---|---|---|---|---|

| Purpose of the loan (select all that apply): | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | ☑ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☑ Covered Supplier Costs | ☑ Covered Worker Protection Expenditures | ☐ Other (explain): |

| PPP First Draw SBA Loan Number: | |
|---|---|

| Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request): | 2020 Quarter (e.g., 2Q 2020): | 2Q 2020 | Reference Quarter (e.g., 2Q 2019): | 2Q 2019 |
|---|---|---|---|---|
| | Gross Receipts: | | Gross Receipts | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Michael Rosenfeld | Manager | 61 | | |
| Glorya Kaufman | Owner | 29 | | |

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | ✓ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | ✓ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | ✓ | |
| 4. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 4 → | | ✓ |
| 5. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 5 → | | ✓ |
| 6. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | ✓ | |
| 7. Is the Applicant a franchise? | | ✓ |
| 8. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | ✓ |



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

By Signing Below, You Make the Following Representations, Authorizations, and Certifications

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.

- I will comply, whenever applicable, with the civil rights and other limitations in this form.

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information.

- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.

- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan.

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings

provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78l).

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

The Applicant is not required to submit a registration statement under section 2 of the Foreign Agents Registration Act of 1938 (22 U.S.C. 612).

The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

35 State Street Hotel Partners, LLC, a Delaware limited liability company

**01/20/21**

_____
Signature of Authorized Representative of Applicant

Date

Michael Rosenfeld

**Manager**

_____
Print Name

Title



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

## Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

## Instructions for completing this form:

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage (including insurance premiums), group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses without 12 months of payroll costs but that were in operation on February 15, 2020, average monthly payroll may be calculated based on the number of months in which payroll costs were incurred, excluding costs over $100,000 on an annualized basis for each employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

In determining whether the Applicant experienced at least a 25% reduction in gross receipts, for loans above $150,000, the Applicant must identify the 2020 quarter meeting this requirement, identify the reference quarter, and state the gross receipts amounts for both quarters, as well as provide supporting documentation. For loans of $150,000 and below, these fields are not required and the Applicant only must certify that the Applicant has met the 25% gross receipts reduction at the time of application; however, upon or before seeking loan forgiveness (or upon SBA request) the Applicant must provide documentation that identifies the 2020 quarter meeting this requirement, identifies the reference quarter, states the gross receipts amounts for both quarters, and supports the amounts provided. For all loans, the appropriate reference quarter depends on how long the Applicant has been in operation:

• For all entities other than those satisfying the conditions set forth below, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the same quarter of 2019. Alternatively, Applicants may compare annual gross receipts in 2020 with annual gross receipts in 2019; Applicants choosing to use annual gross receipts must enter "Annual" in the 2020 Quarter and Reference Quarter fields and, as required documentation, must submit copies of annual tax forms substantiating the annual gross receipts reduction.

• For entities not in business during the first and second quarters of 2019 but in operation during the third and fourth quarters of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than either the third or fourth quarters of 2019.

• For entities not in business during the first, second, and third quarters of 2019 but in operation during the fourth quarter of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the fourth quarter of 2019.

• For entities not in business during 2019 but in operation on February 15, 2020, Applicants must demonstrate that gross receipts in the second, third, or fourth quarter of 2020 were at least 25% lower than the first quarter of 2020.

Gross receipts includes all revenue in whatever form received or accrued (in accordance with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms. Gross receipts do not include the following: taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from gross receipts. Gross receipts of a borrower must be aggregated with gross receipts of its affiliates. For a nonprofit organization, veterans organization, nonprofit news organization, 501(c)(6) organization, and destination marketing organization, gross receipts has the meaning in section 6033 of the Internal Revenue Code of 1986.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box "Employees" is one). For NAICS 72 or eligible news organizations, applicants may not exceed 300 per physical location.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable. For purposes of calculating an Applicant's maximum payroll costs, an Applicant may multiply its average monthly payroll costs by 3.5 only if the Applicant is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 as its business activity code on its most recent IRS income tax return.

All parties listed below are considered owners of the Applicant as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

## PPP Borrower Demographic Information Form (Optional)

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position | |
|---|---|---|---|
| | | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | | |
| Gender | M=Male; F=Female; X=Not Disclosed | | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | | |

**Disclosure is voluntary and will have no bearing on the loan application decision**



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

OMB Control No. 3245-0407
Expiration date: 11/30/2020

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable | |
|---|---|---|
| 35 STATE STREET HOTEL PARTNERS, LLC | Hotel Californian | |
| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
| 36 State Street | ███ | ███ |
| | **Primary Contact** | **E-mail Address** |
| San Barbara, CA, 93101 | ███ | ███ |

**SBA PPP Loan Number:** ███

**Lender PPP Loan Number:** ███

**PPP Loan Amount:** $1,957,400.00

**PPP Loan Disbursement Date:** 2020-04-14

**Employees at Time of Loan Application:** 173

**Employees at Time of Forgiveness Application:** 107

**EIDL Advance Amount:** _____

**EIDL Application Number:** _____

**Payroll Schedule:** The frequency with which payroll is paid to employees is:

☐ Weekly    ☐ Biweekly (every other week)    ☒ Twice a month    ☐ Monthly    ☐ Other _____

**Covered Period:** 2020-04-14 to 2020-09-29

**Alternative Payroll Covered Period, if applicable:** 2020-04-16 to 2020-10-01

If Borrower (together with affiliates, if applicable) received PPP loans in excess of $2 million, check here: ☐

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs: ███

Line 2.  Business Mortgage Interest Payments: ███

Line 3.  Business Rent or Lease Payments: ███

Line 4.  Business Utility Payments: ███

Potential Forgiveness Amounts
Line 5.  Add the amounts on lines 1, 2, 3, and 4: ███

Line 6.  PPP Loan Amount: $1,957,400.00

Line 7.  Payroll Cost 60% Requirement (divide Line 1 by 0.60): ███

Forgiveness Amount
Line 8.  Forgiveness Amount (enter the smallest of Lines 5, 6, and 7): $1,957,400.00



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**

The Authorized Representative of the Borrower certifies to all of the below by initialing next to each one.

The dollar amount for which forgiveness is requested:
- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
- includes payroll costs equal to at least 60% of the forgiveness amount;
- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and
- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

The Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period or Alternative Payroll Covered Period compared to the period between January 1, 2020 and March 31, 2020. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.

The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, and business utility payments.

The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

The tax documents I have submitted to the Lender are consistent with those the Borrower has submitted/will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by initialing at least ONE of the following two items:

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020, and reductions in an employee's hours that a borrower offered to restore and were refused).

The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

35 State Street Hotel Partners, LLC
A Delaware limited liability company

_____     | December 8, 2020
Signature of Authorized Representative of Borrower | Date

Michael Rosenfeld                                | Manager
Print Name                                       | Title

SBA Form 3508EZ (06/20)
Page 2

**13**

SBA_000027



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

**PPP Borrower Demographic Information Form (Optional)**

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position | |
|---|---|---|---|
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | | |
| Gender | M=Male; F=Female; X=Not Disclosed | | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | | |

**Disclosure is voluntary and will have no bearing on the loan forgiveness decision**

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 20 minutes. Comments about this time or the information requested should be sent to Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

SBA Form 3508EZ (06/20)
Page 3

SBA_000028



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

OMB Control No. 3245-0407
Expiration date: 12/31/2023

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable | |
|---|---|---|
| 35 STATE STREET HOTEL PARTNERS, LLC | Hotel Californian | |
| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
| 36 State Street | ███ | ███ |
| Santa Barbara, CA 93101 | **Primary Contact** | **E-mail Address** |
| | ███ | ███ |

**SBA PPP Loan Number:** _____

**Lender PPP Loan Number:** _____

**PPP Loan Amount:** $2,000,000.00

**PPP Loan Disbursement Date:** 02/16/2021

**Employees at Time of Loan Application:** 63

**Employees at Time of Forgiveness Application:** 166

**EIDL Advance Amount:** _____

**EIDL Application Number:** _____

**Payroll Schedule:** The frequency with which payroll is paid to employees is:

☐ **Weekly**    ☐ **Biweekly** (every other week)    ☑ **Twice a month**    ☐ **Monthly**    ☐ **Other** _____

**Covered Period:** 02/16/2021 _____ to 08/02/2021 _____

**Alternative Payroll Covered Period, if applicable:** _____ to _____

**If Borrower (together with affiliates, if applicable) received PPP loans in excess of $2 million, check here:** ☐

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.   Payroll Costs:                                                                ███████

Line 2.   Business Mortgage Interest Payments:                               ███████

Line 3.   Business Rent or Lease Payments:                                      ███████

Line 4.   Business Utility Payments:                                                ███████

Potential Forgiveness Amounts
Line 5.   Add the amounts on lines 1, 2, 3, and 4:                           ███████

Line 6.   PPP Loan Amount:                                                          $2,000,000.00

Line 7.   Payroll Cost 60% Requirement (divide Line 1 by 0.60):        ███████

Forgiveness Amount
Line 8.   Forgiveness Amount (enter the smallest of Lines 5, 6, and 7):    $2,000,000.00



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.

The dollar amount for which forgiveness is requested:
- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
- includes payroll costs equal to at least 60% of the forgiveness amount;
- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and
- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

The Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period or Alternative Payroll Covered Period compared to the period between January 1, 2020 and March 31, 2020. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.

The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, and business utility payments.

The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

The tax documents I have submitted to the Lender are consistent with those the Borrower has submitted/will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020, and reductions in an employee's hours that a borrower offered to restore and were refused).

_____ The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

_____     _____
Signature of Authorized Representative of Borrower     Date

Michael Rosenfeld                                        Manager
_____     _____
Print Name                                               Title

SBA Form 3508EZ (06/20)
Page 2

**17**

SBA_000031



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

**PPP Borrower Demographic Information Form (Optional)**

## Instructions

1. **Purpose.** Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description.** This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal.** The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name.** Insert the full name of the Principal.
5. **Position.** Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | Position | |
|---|---|---|
| | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | |
| Gender | M=Male; F=Female; X=Not Disclosed | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | |

**Disclosure is voluntary and will have no bearing on the loan forgiveness decision**

**Paperwork Reduction Act –** You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 20 minutes. Comments about this time or the information requested should be sent to Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

OMB Control No.: 3245-0417
Expiration Date: 7/31/2021

| Check One: | Sole Proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC ☐ Independent Contractor ☐ Self-Employed Individual ☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization ☐ 501(c)(19) veterans organization ☐ Housing cooperative ☐ Tribal Business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|---|
| | | **Stanford Court Hotel** | **2014** |

| Business Legal Name | NAICS Code |
|---|---|
| Pine & Powell Partners, LLC | 721110 |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| Property Physical Address: 905 California St, San Francisco, CA 94108-2201 Entity Mailing Address: 1999 Avenue of Stars, Suite 2850, Los Angeles, CA 90067-4627 | Primary Contact | Email Address |

| Average Monthly Payroll: | ▉ | x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000): | $2,000,000.00 | Number of Employees (including affiliates, if applicable; may not exceed 300): | 117.00 |
|---|---|---|---|---|---|

| Purpose of the loan (select all that apply): | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | ☑ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☑ Covered Supplier Costs | ☑ Covered Worker Protection Expenditures | ☐ Other (explain): |

**PPP First Draw SBA Loan Number:**

| Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request): | 2020 Quarter (e.g., 2Q 2020): | 2Q 2020 | Reference Quarter (e.g., 2Q 2019): | 2Q 2019 |
|---|---|---|---|---|
| | Gross Receipts: | | Gross Receipts | |

**Applicant Ownership**
List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Michael Rosenfeld | Manager | 90 | | |
| | | | | |

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | ✓ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | ✓ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | ✓ | |
| 4. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 4 → | | ✓ |
| 5. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 5 → | | ✓ |
| 6. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | ✓ | |
| 7. Is the Applicant a franchise? | | ✓ |
| 8. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | ✓ |



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

By Signing Below, You Make the Following Representations, Authorizations, and Certifications

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.

- I will comply, whenever applicable, with the civil rights and other limitations in this form.

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information.

- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.

- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan.

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings

provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

The Applicant is not required to submit a registration statement under section 2 of the Foreign Agents Registration Act of 1938 (22 U.S.C. 612).

The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

Pine & Powell Partners, LLC, a Delaware limited liability company

01/20/21

_____                     _____
Signature of Authorized Representative of Applicant      Date

Michael Rosenfeld                                        Manager

_____                     _____
Print Name                                               Title



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

## Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

## Instructions for completing this form:

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage (including insurance premiums), group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses without 12 months of payroll costs but that were in operation on February 15, 2020, average monthly payroll may be calculated based on the number of months in which payroll costs were incurred, excluding costs over $100,000 on an annualized basis for each employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

In determining whether the Applicant experienced at least a 25% reduction in gross receipts, for loans above $150,000, the Applicant must identify the 2020 quarter meeting this requirement, identify the reference quarter, and state the gross receipts amounts for both quarters, as well as provide supporting documentation. For loans of $150,000 and below, these fields are not required and the Applicant only must certify that the Applicant has met the 25% gross receipts reduction at the time of application; however, upon or before seeking loan forgiveness (or upon SBA request) the Applicant must provide documentation that identifies the 2020 quarter meeting this requirement, identifies the reference quarter, states the gross receipts amounts for both quarters, and supports the amounts provided. For all loans, the appropriate reference quarter depends on how long the Applicant has been in operation:

• For all entities other than those satisfying the conditions set forth below, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the same quarter of 2019. Alternatively, Applicants may compare annual gross receipts in 2020 with annual gross receipts in 2019; Applicants choosing to use annual gross receipts must enter "Annual" in the 2020 Quarter and Reference Quarter fields and, as required documentation, must submit copies of annual tax forms substantiating the annual gross receipts reduction.

• For entities not in business during the first and second quarters of 2019 but in operation during the third and fourth quarters of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than either the third or fourth quarters of 2019.

• For entities not in business during the first, second, and third quarters of 2019 but in operation during the fourth quarter of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the fourth quarter of 2019.

• For entities not in business during 2019 but in operation on February 15, 2020, Applicants must demonstrate that gross receipts in the second, third, or fourth quarter of 2020 were at least 25% lower than the first quarter of 2020.

Gross receipts includes all revenue in whatever form received or accrued (in accordance with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms. Gross receipts do not include the following: taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from gross receipts. Gross receipts of a borrower must be aggregated with gross receipts of its affiliates. For a nonprofit organization, veterans organization, nonprofit news organization, 501(c)(6) organization, and destination marketing organization, gross receipts has the meaning in section 6033 of the Internal Revenue Code of 1986.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box "Employees" is one). For NAICS 72 or eligible news organizations, applicants may not exceed 300 per physical location.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable. For purposes of calculating an Applicant's maximum payroll costs, an Applicant may multiply its average monthly payroll costs by 3.5 only if the Applicant is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 as its business activity code on its most recent IRS income tax return.

23
SBA_000037

All parties listed below are considered owners of the Applicant as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** -- You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** -- Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** -- Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** -- SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** -- The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** -- This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** -- The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** -- All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** -- Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** -- By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

## PPP Borrower Demographic Information Form (Optional)

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position | |
|---|---|---|---|
| | | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | | |
| Gender | M=Male; F=Female; X=Not Disclosed | | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | | |

**Disclosure is voluntary and will have no bearing on the loan application decision**



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

OMB Control No.: 3245-0417
Expiration Date: 7/31/2021

| Check One: | Sole Proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC ☐ Independent Contractor ☐ Self-Employed Individual ☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization ☐ 501(c)(19) veterans organization ☐ Housing cooperative ☐ Tribal Business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|---|
| | | Huntington Hotel | 2018 |

| Business Legal Name | NAICS Code |
|---|---|
| WRC Huntington, LLC | 721110 |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| Property Physical Address: 1075 California St, San Francisco, CA 94108-2251 Entity Mailing Address: 1999 Avenue of Stars, Suite 2850, Los Angeles, CA 90067-4627 | | |
| | Primary Contact | Email Address |
| | | |

| Average Monthly Payroll: | | x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000): | $2,000,000.00 | Number of Employees (including affiliates, if applicable; may not exceed 300): | 128.00 |
|---|---|---|---|---|---|

| Purpose of the loan (select all that apply): | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | ☑ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☑ Covered Supplier Costs | ☑ Covered Worker Protection Expenditures | ☐ Other (explain): |

| PPP First Draw SBA Loan Number: | |
|---|---|

| Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request): | 2020 Quarter (e.g., 2Q 2020): | 2Q 2020 | Reference Quarter (e.g., 2Q 2019): | 2Q 2019 |
|---|---|---|---|---|
| | Gross Receipts: | | Gross Receipts | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Michael Rosenfeld | Authorized Signatory | 90 | | |
| | | | | |

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | ✓ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | ✓ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | ✓ | |
| 4. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 4 → | | ✓ |
| 5. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 5 → | | ✓ |
| 6. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | ✓ | |
| 7. Is the Applicant a franchise? | | ✓ |
| 8. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | ✓ |



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.

- I will comply, whenever applicable, with the civil rights and other limitations in this form.

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information.

- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.

- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan.

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings

provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

The Applicant is not required to submit a registration statement under section 2 of the Foreign Agents Registration Act of 1938 (22 U.S.C. 612).

The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

WRC Huntington, LLC, a Delaware limited liability company

01/20/21

Signature of Authorized Representative of Applicant | Date

Michael Rosenfeld | Authorized Signatory

Print Name | Title



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

**Instructions for completing this form:**

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage (including insurance premiums), group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses without 12 months of payroll costs but that were in operation on February 15, 2020, average monthly payroll may be calculated based on the number of months in which payroll costs were incurred, excluding costs over $100,000 on an annualized basis for each employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

In determining whether the Applicant experienced at least a 25% reduction in gross receipts, for loans above $150,000, the Applicant must identify the 2020 quarter meeting this requirement, identify the reference quarter, and state the gross receipts amounts for both quarters, as well as provide supporting documentation. For loans of $150,000 and below, these fields are not required and the Applicant only must certify that the Applicant has met the 25% gross receipts reduction at the time of application; however, upon or before seeking loan forgiveness (or upon SBA request) the Applicant must provide documentation that identifies the 2020 quarter meeting this requirement, identifies the reference quarter, states the gross receipts amounts for both quarters, and supports the amounts provided. For all loans, the appropriate reference quarter depends on how long the Applicant has been in operation:

• For all entities other than those satisfying the conditions set forth below, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the same quarter of 2019. Alternatively, Applicants may compare annual gross receipts in 2020 with annual gross receipts in 2019; Applicants choosing to use annual gross receipts must enter "Annual" in the 2020 Quarter and Reference Quarter fields and, as required documentation, must submit copies of annual tax forms substantiating the annual gross receipts reduction.

• For entities not in business during the first and second quarters of 2019 but in operation during the third and fourth quarters of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than either the third or fourth quarters of 2019.

• For entities not in business during the first, second, and third quarters of 2019 but in operation during the fourth quarter of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the fourth quarter of 2019.

• For entities not in business during 2019 but in operation on February 15, 2020, Applicants must demonstrate that gross receipts in the second, third, or fourth quarter of 2020 were at least 25% lower than the first quarter of 2020.

Gross receipts includes all revenue in whatever form received or accrued (in accordance with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms. Gross receipts do not include the following: taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from gross receipts. Gross receipts of a borrower must be aggregated with gross receipts of its affiliates. For a nonprofit organization, veterans organization, nonprofit news organization, 501(c)(6) organization, and destination marketing organization, gross receipts has the meaning in section 6033 of the Internal Revenue Code of 1986.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box "Employees" is one). For NAICS 72 or eligible news organizations, applicants may not exceed 300 per physical location.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable. For purposes of calculating an Applicant's maximum payroll costs, an Applicant may multiply its average monthly payroll costs by 3.5 only if the Applicant is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 as its business activity code on its most recent IRS income tax return.

All parties listed below are considered owners of the Applicant as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

## PPP Borrower Demographic Information Form (Optional)

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position | |
|---|---|---|---|
| | | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | | |
| Gender | M=Male; F=Female; X=Not Disclosed | | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | | |

**Disclosure is voluntary and will have no bearing on the loan application decision**



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

OMB Control No.: 3245-0417
Expiration Date: 7/31/2021

| Check One: | ☐ Sole Proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC<br>☐ Independent Contractor ☐ Self-Employed Individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization<br>☐ 501(c)(19) veterans organization ☐ Housing cooperative<br>☐ Tribal Business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|---|
| | | Hyatt Regency Newport Beach | 2018 |

| Business Legal Name | NAICS Code |
|---|---|
| WRC Newport, LLC | 721110 |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| Property Physical Address: 1107 Jamboree Rd, Newport Beach, CA 92660-6219<br>Entity Mailing Address: 1999 Avenue of the Stars, Suite 2850, Los Angeles, CA 90067-4627 | | |
| | Primary Contact | Email Address |
| | | |

| Average Monthly Payroll: | | x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000): | $2,000,000.00 | Number of Employees (including affiliates, if applicable; may not exceed 300): | 181.00 |
|---|---|---|---|---|---|

| Purpose of the loan (select all that apply): | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | ☑ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☑ Covered Supplier Costs | ☑ Covered Worker Protection Expenditures | ☐ Other (explain): |

| PPP First Draw SBA Loan Number: | |
|---|---|

| Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request): | 2020 Quarter (e.g., 2Q 2020): | 2Q 2020 | Reference Quarter (e.g., 2Q 2019): | 2Q 2019 |
|---|---|---|---|---|
| | Gross Receipts: | | Gross Receipts | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Michael Rosenfeld | Authorized Signatory | 53 | | |
| Robert Spears | Owner | 22 | | |
| James Parks | owner | 22 | | |

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | ✓ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | ✓ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | ✓ | |
| 4. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?<br>Initial here to confirm your response to question 4 → | | ✓ |
| 5. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 5 → | | ✓ |
| 6. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | ✓ | |
| 7. Is the Applicant a franchise? | | ✓ |
| 8. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | ✓ |



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.

- I will comply, whenever applicable, with the civil rights and other limitations in this form.

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information.

- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.

- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan.

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings

provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

The Applicant is not required to submit a registration statement under section 2 of the Foreign Agents Registration Act of 1938 (22 U.S.C. 612).

The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

WRC Newport, LLC, a Delaware limited liability company

| | |
|---|---|
| _____ | **01/20/21** |
| Signature of Authorized Representative of Applicant | Date |
| | |
| Michael Rosenfeld | Authorized Signatory |
| _____ | |
| Print Name | Title |



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

<u>Purpose of this form:</u>

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

<u>Instructions for completing this form:</u>

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage (including insurance premiums), group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses without 12 months of payroll costs but that were in operation on February 15, 2020, average monthly payroll may be calculated based on the number of months in which payroll costs were incurred, excluding costs over $100,000 on an annualized basis for each employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

In determining whether the Applicant experienced at least a 25% reduction in gross receipts, for loans above $150,000, the Applicant must identify the 2020 quarter meeting this requirement, identify the reference quarter, and state the gross receipts amounts for both quarters, as well as provide supporting documentation. For loans of $150,000 and below, these fields are not required and the Applicant only must certify that the Applicant has met the 25% gross receipts reduction at the time of application; however, upon or before seeking loan forgiveness (or upon SBA request) the Applicant must provide documentation that identifies the 2020 quarter meeting this requirement, identifies the reference quarter, states the gross receipts amounts for both quarters, and supports the amounts provided. For all loans, the appropriate reference quarter depends on how long the Applicant has been in operation:

• For all entities other than those satisfying the conditions set forth below, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the same quarter of 2019. Alternatively, Applicants may compare annual gross receipts in 2020 with annual gross receipts in 2019; Applicants choosing to use annual gross receipts must enter "Annual" in the 2020 Quarter and Reference Quarter fields and, as required documentation, must submit copies of annual tax forms substantiating the annual gross receipts reduction.

• For entities not in business during the first and second quarters of 2019 but in operation during the third and fourth quarters of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than either the third or fourth quarters of 2019.

• For entities not in business during the first, second, and third quarters of 2019 but in operation during the fourth quarter of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the fourth quarter of 2019.

• For entities not in business during 2019 but in operation on February 15, 2020, Applicants must demonstrate that gross receipts in the second, third, or fourth quarter of 2020 were at least 25% lower than the first quarter of 2020.

Gross receipts includes all revenue in whatever form received or accrued (in accordance with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms. Gross receipts do not include the following: taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from gross receipts. Gross receipts of a borrower must be aggregated with gross receipts of its affiliates. For a nonprofit organization, veterans organization, nonprofit news organization, 501(c)(6) organization, and destination marketing organization, gross receipts has the meaning in section 6033 of the Internal Revenue Code of 1986.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box "Employees" is one). For NAICS 72 or eligible news organizations, applicants may not exceed 300 per physical location.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable. For purposes of calculating an Applicant's maximum payroll costs, an Applicant may multiply its average monthly payroll costs by 3.5 only if the Applicant is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 as its business activity code on its most recent IRS income tax return.

All parties listed below are considered owners of the Applicant as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

### PPP Borrower Demographic Information Form (Optional)

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position | |
|---|---|---|---|
| | | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | | |
| Gender | M=Male; F=Female; X=Not Disclosed | | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | | |

**Disclosure is voluntary and will have no bearing on the loan application decision**



**SMALL BUSINESS ADMINISTRATION**
**WASHINGTON, DC 20416**

08/03/2022

VIA Forgiveness Platform



East West Bank

Re: PPP Request for Production of Documents and Information
    Borrower: 35 STATE STREET HOTEL PARTNERS, LLC
    SBA Loan No. ▉▉▉▉▉▉▉
    Loan Approval Amount: $2,000,000.00
    Loan Approval Date: 02/08/2021
    Lender Forgiveness Decision Submission Date: 06/07/2022

*Dear:* ▉▉▉▉▉▉

The U.S. Small Business Administration (SBA) is requesting additional documents or information for its review of the above-referenced Paycheck Protection Program (PPP) loan.

This request is in addition to the documentation requested in the Notification of Paycheck Protection Program Loan Review.

As detailed below, you must respond to this request within 20 business days of the date of this letter. If SBA does not receive a response within the stated period , or any other requested documentation is still outstanding, SBA will make a decision based on available information. Such a decision may include denial of forgiveness, referral to the Office of Credit Risk Management, and/or transfer of this matter (borrower and lender) to the Inspector General.

If any of the following documents were not already provided by the borrower, you must request them from the borrower.  The borrower should respond to these requests within 10 business days of receipt. You must submit the documents and information provided by the borrower to SBA via the Forgiveness Platform.

SBA requests the following documents or information from the borrower:

**We are conducting an affiliation review of documentation provided for the above referenced PPP loan forgiveness application and affiliated companies.  Based on our preliminary findings, we are**

**49**

considering recommending a Full Denial.  Please understand this is preliminary and will undergo more processing before reaching a final decision.  We are considering this recommendation for the following reason (s):

- Potential Affiliation Issues – Borrower, together with its affiliates, may not meet SBA small business size standards and/or the PPP corporate maximum limits

The requested information below will enable us to assess potential affiliation of entities based on ownership, common management and/or identity of interest that may impact eligibility.  Please refer to the applicable affiliation rules here: **Affiliation Rules Overview**.

Please see list of possible affiliates below:

- Pine & Powell Partners, LLC
- WRC Newport, LLC
- 35 State Street Hotel Partners, LLC

The following documentation is required to determine eligibility of the affiliated group(s):

- Affiliation Worksheet (SBA Form 3511) for the Borrower and its affiliates at the time of their application.
- Complete all required information for the borrower and affiliates; those listed and any unlisted above.
- Initialed, signed and dated by the borrower including all addendums
- Provide the EIN's of all entities affiliated listed in SBA form 3511

**50**

SBA_000064

- **Select the applicable Size Standard (A. Employee-Based, B. Receipt-Based or C. Alternative Size Standard) and include supporting information and the verified NAICS Codes.**

- **Regardless of the size standard selected, please provide the number of employees for each entity.**
- **Form 3511 is available through the PPP Platform dated 7/2021. Please read the form instructions carefully.**

- **Comprehensive Corporate Organizational Chart showing relationships between affiliated entities and ownership listed, percentages owned, EIN/SSNs with detailed management listed for those who hold control.  If ownership is held by an entity, the underlying ownership to individuals must be provided with details.**

- **2018 & 2019 complete, filed and signed Federal Income Tax returns for all entity affiliates including all pages and all schedules.**

- **Provide a written and signed statement disclosing all PPP loans obtained that are affiliated with the borrower, its affiliates and majority ownership as listed above and/or per the Affiliation Rules Overview link as applicable.**

- **SBA Form 2483 - PPP Borrower Loan Application**
- **SBA Form 2483 should be completed, signed, and dated as required per the CARES Act, section 1102, titled the "Paycheck Protection Program".  Form must be specific to the borrowing entity.**

**51**

SBA_000065

**Please provide the following information for us to verify the maximum eligible loan and forgiveness amounts.**

- **2019 Form 941 (all four quarters), W-2 Reports or Payroll Summary Reports to identify gross compensation for all Owners and/or Employees, including annualized earnings more than $100,000.**

- **2019 Employer Contributions to Employee's group health, life, disability, vision, and dental insurance plans (if applicable)**
- **2019 Employer Contribution employer retirement contributions (if applicable)**

- **2019 State quarterly unemployment insurance tax filings reported (from state quarterly wage reporting forms)**
- **2020 Form 941 (all four quarters)**

- **Covered Period Payroll Summary Reports to identify gross compensation for all Owners and/or Employees, including annualized earnings more than $100,000**
- **P & L report for the Revenue Reduction as disclosed on the 2483 for the Second Quarter of 2020 to Second Quarter of 2019**

**If these entities noted above are affiliates of the borrower, the borrower must include them, and any other affiliates, in its responses on the Affiliation Worksheet that the borrower submits.  If the borrower is not affiliated with one or more of the entities identified above, the borrower must provide a detailed written explanation on a separate sheet identified as an addendum to the Affiliation Worksheet.**

SBA_000066

**If you have additional information to address the issues mentioned above, PLEASE RESPOND TO THIS MESSAGE IN THE PPP PLATFORM AS SOON AS POSSIBLE WITH THE ADDITIONAL INFORMATION.**

**Or if you do not have information to address the issues mentioned above, PLEASE ASK THE BORROWER FOR THIS INFORMATION GIVING THEM TEN (10) BUSINESS DAYS TO RESPOND.**

**We would like to have all information before making a recommendation and forwarding for further processing. If this new information alters our current proposed recommendation, you will be notified of the change.**

**If you have no additional information to provide and the borrower has not responded within the required ten business days, PLEASE RESPOND IN THE PPP PLATFORM THAT YOU DO NOT HAVE ADDITIONAL INFORMATION. We have sent this same message through the platform**

As noted above, if the SBA does not receive a response within 20 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information.

Thank you for your cooperation.

Sincerely,

Office of Financial Program Operations
U.S. Small Business Administration

SBA_000067

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

35 State Street Hotel Partners, LLC                    Docket No. PPP- ▮▮▮▮▮▮

Appellant

Appealed from

SBA PPP Loan No. ▮▮▮▮▮▮

### MOTION TO DISMISS THE PAYCHECK PROTECTION PROGRAM APPEAL

Pursuant to 13 C.F.R. § 134.211(e)[1], the United States Small Business Administration (SBA), through its undersigned attorney, submits this Motion to Dismiss the Paycheck Protection Program (PPP) Appeal, filed with the Office of Hearings and Appeals (OHA) on September 26, 2022 (hereinafter referred to as "Appeal"). SBA moves for dismissal of the Appeal because SBA has withdrawn its final SBA loan review decision on the PPP loan issued to the borrower, 35 State Street Hotel Partners, LLC, SBA Loan No. ▮▮▮▮▮▮ (hereinafter referred to as "the Loan").[2]

OHA has jurisdiction to conduct proceedings in the types of cases identified in 13 C.F.R. § 134.102. Paragraph (w) of 13 C.F.R. § 134.102 states that "OHA has authority to conduct proceedings in the following cases: Appeals of *certain SBA loan review decisions* as defined in 13 C.F.R. § 134.1201." (emphasis added). Title 13 C.F.R. § 134.1201, *et seq.* governs OHA

---

[1] Title 13 C.F.R. § 134.1201, *et seq.* governs appeals under the Paycheck Protection Program. Title 13 C.F.R § 134.1201(h) incorporates additional specific regulations including, but not limited to, 13 C.F.R § 134.211.
[2] The Notice and Order issued February 11, 2022, provides for SBA to file the Administrative Record in this matter on Thursday, March 3, 2022. In view of this motion to dismiss, the AR will not be filed but will be filed immediately if the motion were to be declined.

1

appeals under the PPP.  Paragraph (a) of 13 C.F.R. § 134.1201 specifically provides that "[t]he rules of practice in this subpart apply to appeals to OHA from *certain final SBA loan review decisions under the [PPP] as described in paragraph (b) of this section*, and to any other PPP matter referred to OHA by the Administrator of SBA." (emphasis added).  Paragraph (b) of section 134.1201 provides the types of final SBA loan review decisions appealable to OHA.  No regulation other than 13 C.F.R. § 134.102(w) and 13 C.F.R. § 134.1201 provide OHA with jurisdiction to adjudicate a PPP matter.  Therefore, OHA only has jurisdiction to adjudicate PPP appeals when a certain type of final SBA loan review decision under the PPP has been issued or when a matter is referred by the SBA Administrator.

On November 18, 2022, SBA withdrew the final SBA loan review decision issued on the Loan.  *See* Declaration of Jason C. Frulla, attached as Exhibit A, ¶4.  SBA withdrew that decision because it determined that it is necessary to complete a further review of the Loan. *See id.* This review will include, but may not be limited to, efforts to determine whether additional matters should be considered in the issuance of another final SBA loan review decision or whether Appellant is eligible for loan forgiveness.  *See id.*

SBA has broad authority to conduct loan reviews and may modify and withdraw a final SBA loan review decision.  SBA regulations governing the forgiveness and review of loans under the PPP provide that SBA may undertake a review of a PPP loan of any size "*at any time in SBA's discretion*." *See* 86 Fed. Reg. 8283, 8294 (February 3, 2021) (emphasis added); *see also* 85 Fed. Reg. 33010, 33014 (May 8, 2020); *see also* SBA Procedural Notice, Procedures for Lender Submission of Paycheck Protection Program Loan Forgiveness Decisions to SBA and SBA Forgiveness Loan Reviews, Control No.: 5000-20038 (July 23, 2020), available at https://www.sba.gov/document/procedural-notice-5000-20038-procedures-lender-submission-paycheck-protection-program-loan-forgiveness-decisions-sba-sba (last visited March 2, 2022).

SBA_000075

In addition, SBA's "Frequently Asked Questions" for PPP loans provide that "For a PPP loan of any size, SBA may undertake a review at any time, before or after SBA remits a forgiveness payment to the lender, in SBA's discretion." *See* FAQ 39, available at https://www.sba.gov/document/support-faq-ppp-borrowers-lenders (last visited March 2, 2022).

Moreover, the SBA regulation at 13 C.F.R.§ 134.1212 provides that upon remand "OHA no longer has jurisdiction over the matter unless a new appeal is filed *as a result of a new final SBA loan review decision.*" (emphasis added). Therefore, SBA regulations explicitly permit loan reviews to occur at any time in SBA's discretion, as well as the issuance of more than one final SBA loan review decision for a PPP loan.

In PPP Appeal of Alex G. Smith, Chapter 7 Trustee of Mountain States Rosen, LLC, Docket No. PPP-7304677106 (J. Hyde, November 12, 2021), OHA granted SBA's motion to dismiss filed in that matter after SBA withdrew the decision so that SBA could conduct a further review of the loan. In doing so, OHA stated that "[t]he instant case thus is analogous to situations in which SBA voluntarily requests a remand so that SBA may reexamine its decision. OHA routinely grants such requests. *E.g.*, *Matter of Gov't Contracting Servs., LLC*, SBA No. VET- 230 (2012)."

Since there is no longer a final SBA loan review decision on the Loan at this time and the Administrator has not referred this matter to OHA, there is no jurisdiction for OHA to adjudicate this matter. In addition, as a matter of judicial economy, it is appropriate to give SBA the opportunity to conduct a further review. Therefore, the appeal should be dismissed in accordance with OHA regulations. Title 13 C.F.R. § 134.1205(a)(1) provides that the "Judge must dismiss the appeal if: The appeal is beyond OHA's jurisdiction as set forth under § 134.1201." (emphasis added).

SBA_000076

Therefore, the Agency respectfully moves OHA to dismiss the appeal.[3]

Respectfully submitted,


/s/ Jayson Pang
Jayson Pang
Attorney for SBA

---

[3] In sum, SBA withdrew its final loan review decision (Exhibit A) because it determined that it is necessary to complete a further review of the loan (e.g., to determine whether additional matters should be considered in the issuance of another final SBA loan review decision or whether Appellant is eligible for loan forgiveness). With SBA withdrawing its final SBA loan review decision, OHA no longer has a decision over which it has jurisdiction to review. (13 CFR §134.1201(b)(1)-(4)). 13 C.F.R.§ 134.1212 provides "OHA may affirm, reverse, or remand a final SBA loan review decision. If remanded, OHA no longer has jurisdiction over the matter unless a new appeal is filed as a result of a new final SBA loan review decision." The regulations do not provide for remand upon dismissal. In this case, dismissal, without remand, is appropriate. OHA may again have jurisdiction over this loan matter if SBA were to issue *a new final SBA loan review decision*, and appellant were to take appropriate and timely action to appeal.

SBA_000077

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

35 State Street Hotel Partners, LLC

Appellant

Appealed from

SBA PPP Loan No. █████████

Docket No. PPP-█████████

## CERTIFICATE OF SERVICE

I certify that on November 21 2022, I caused a copy of this motion to be served on the parties via the OHA Case Portal.

Respectfully submitted,

/s/ Jayson Pang
Jayson Pang
Agency Counsel
U.S. Small Business Administration
2401 Fourth Avenue, Ste. 450
Seattle, WA 98121
Phone:  (206) 295-0447

5

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) ) | |
| 35 State Street Hotel Partners, LLC, | ) ) | Docket No. PPP-█████████ |
|   Appellant. | ) ) | |
| Appealed from SBA PPP Loan No. ██████████ | ) ) ) | |

<u>**EXHIBIT A**</u>

**DECLARATION OF JASON C. FRULLA**

     I, Jason C. Frulla, for my declaration pursuant to 28 U.S.C. § 1746, depose and say as follows:

1. I work at the United States Small Business Administration ("SBA") as a Loan Specialist, Office of Financial Program Operations, in the Office of Capital Access. The Office of Capital Access is responsible for the operation of and development of policy for the SBA's business loan programs authorized under the Paycheck Protection Program ("PPP") authorized under the Coronavirus Aid, Relief, and Economic Security Act (Pub. L. 116–136); the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116–139); the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116–142); the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. 116–260); the American Rescue Plan Act of 2021 (Pub. L. 117-2); and the PPP Extension Act of 2021 (Pub. L. 117–6). I am knowledgeable about the PPP programs and have access to relevant PPP files and records.

2. I submit this declaration in support of the SBA's Motion to Dismiss filed in the above-captioned matter. The statements contained in this declaration are based on my personal knowledge and information made available to me in the course of carrying out my duties and responsibilities as a Loan Specialist, Office of Financial Program Operations.

3. I have reviewed relevant SBA records with respect to the above-captioned PPP Loan ████████ (hereinafter referred to as the "Loan").

4. On or about November 18, 2022, SBA withdrew the Agency's final SBA loan review decision on the Loan for SBA to complete a further review of the Loan. This review will include, but may not be limited to, efforts to determine whether additional matters should be considered in the issuance of another final SBA loan review decision or whether Appellant is eligible for loan forgiveness.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on the date set forth in the electronic signature block below.

Jason C. Frulla
Digitally signed by Jason C. Frulla
Date: 2022.11.21 08:27:03 -06'00'

Jason C. Frulla
Loan Specialist
Office of Financial Program Operations

2

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Michael D. Bopp
Direct: +1 202.955.8256
Fax: +1 202.530.9648
MBopp@gibsondunn.com

April 27, 2022

U.S. Small Business Administration
Office of Hearings and Appeals
409 Third St., SW., Eighth Floor
Washington, DC 20416

Re:    Appeal of Final Loan Review Decision for SBA Loan No. ▮▮▮▮▮▮▮

To whom it may concern:

        We write to appeal the Final Loan Review Decision (the "Decision") issued by the
Small Business Administration ("SBA") on March 28, 2023, which determined, incorrectly,
that 35 State Street Hotel Partners, LLC (d/b/a "Hotel Californian") was ineligible for the $2
million Second Draw loan it received under the Paycheck Protection Program ("PPP").  *See*
Ex. A.  That Decision was based on a limitation on loan eligibility that contradicts the statute
authorizing the PPP.  The so-called "single corporate group" ("SCG") limitation is unlawful
and cannot serve as a barrier to Hotel Californian's loan eligibility or forgiveness.

        The SBA's Decision is incorrect as a matter of law and, therefore, under the
applicable standard of review, must be reversed.  *See* 13 C.F.R. § 134.1210.  Hotel
Californian acknowledges that it shares common ownership with three other entities that
obtained Second Draw PPP loans; that, in the aggregate, it and its affiliates obtained $8
million in PPP loans; and that this amount exceeds the $4 million cap the SBA has attempted
to impose administratively on how much members of an SCG may obtain in PPP assistance.
But the SBA's SCG limitation is patently unlawful as applied to Hotel Californian.  It
directly contradicts Congress's waiver of the SBA's affiliation rules for businesses, like
Hotel Californian, that have a NAICS code starting with 72.  Imposing new affiliation
barriers on loan eligibility severely harms the many hotels and restaurants that relied in good
faith on Congress's waiver of the affiliation rules, and depended on PPP loans to survive the
pandemic.  The SBA's decision to do so has no basis in law, and must be set aside.

        Further, Hotel Californian is also entitled to forgiveness of its loan because the SBA's
denial directly contradicts its decision to forgive the Second Draw loan—identical to Hotel
Californian's loan in all relevant respects—of one of the entities with which Hotel
Californian is affiliated.  We further understand that, in other PPP appeal proceedings, the
SBA Office of Hearings and Appeals ("OHA") has acknowledged that the SBA's affiliation
rules cannot be applied to NAICS 72 entities.  Treating Hotel Californian differently is the
definition of arbitrary and capricious action, and cannot stand.

        This is the second time that the SBA has denied Hotel Californian forgiveness for its
Second Draw loan.  After the agency did so the first time, Hotel Californian filed an appeal

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

SBA_000082

# GIBSON DUNN

U.S. Small Business Administration
April 27, 2022
Page 2

petition that pointed out all of the reasons why the SCG limitation cannot bar loan forgiveness.  In response, the SBA withdrew the denial.  Now, the SBA is back, with a new denial that, in substance, rests on the same SCG limitation that underlaid its previous denial.  The same mistaken course of action should not be permitted to lead to different results.  Indeed, the case for granting Hotel Californian loan forgiveness is even stronger now, given that, since withdrawing the first denial, the SBA has opted to forgive a virtually identical loan issued to one of Hotel Californian's affiliates.  Hotel Californian is thus entitled to full forgiveness of its Second Draw loan and the SBA's denial should be reversed.

## BACKGROUND

Hotel Californian is a separately operated, single hotel property in Santa Barbara, California, at which, at the time it applied for the Second Draw PPP loan, it employed 63 individuals.[1]  *See* Ex. B.  Like so many other businesses in accommodations and food services industries, Hotel Californian's operations were significantly disrupted by the coronavirus pandemic, which jeopardized its financial survival.  Between the second quarter of 2019 and the second quarter of 2020, Hotel Californian experienced a 78 percent decline in its gross receipts, putting it at severe risk of having to close its doors and leave its employees without work.  *See id.*

This is exactly the type of business the PPP was designed to assist.  Not surprisingly, Hotel Californian applied for a First Draw PPP loan.  It was in the amount of $1,957,400.  *See* Ex. C  The first-draw loan was disbursed on April 14, 2020, and subsequently forgiven in full.

On January 20, 2021, Hotel Californian applied for a Second Draw PPP loan in the amount of $2 million.  *See* Ex. B.  At that time, the pandemic continued to threaten its financial viability, and the Second Draw loan was essential to avoid mass layoffs and the shuttering of the hotel.  The loan was approved on February 8, 2022, and disbursed on February 16, 2021.  *See* Ex. A.  The funds were used exclusively to cover Hotel Californian's payroll costs, making the full amount eligible for loan forgiveness.  *See* 15 U.S.C. § 636(a)(37)(J); Ex. D.

Also on January 20, 2021, three other businesses that operate separate hotel properties—WRC Newport, LLC; WRC Huntington, LLC; and Pine & Powell Partners, LLC (collectively, with Hotel Californian, the "Affiliated Entities")—with which Hotel Californian shares a common owner, applied for Second Draw PPP loans in the amount of $2

---

[1] On its Second Draw application, Hotel Californian mistakenly stated that it had 173 employees at the time it submitted the application.  *See* Ex. B.  It in fact employed 63 individuals at that time.  *See* Ex. D.  This error does not alter Hotel Californian's eligibility for the Second Draw loan.

SBA_000083

**GIBSON DUNN**

U.S. Small Business Administration
April 27, 2022
Page 3

million each.[2]  *See* Ex. E.  Although the loan applications were all submitted on the same day, they appear to have been processed by the SBA at different speeds, and ultimately disbursed on different days:  February 16, 2021, March 25, 2021, and February 5, 2021, respectively.  *See* Ex. F.

On June 7, 2022, Hotel Californian applied for forgiveness for the Second Draw loan. *See* Ex. D.  On August 3, the SBA requested additional information about the loan, and indicated that it was considering a full denial of the application.  *See* Ex. G.  In particular, the SBA's August 3 letter claimed that there were "Potential Affiliation Issues" with the loan because Hotel Californian, "together with its affiliates, may not meet SBA small business size standards and/or the PPP corporate maximum limits."  *Id*. at 2.  The letter identified Pine & Powell Partners, LLC and WRC Newport, LLC as potential affiliates.  *Id*.  The list of additional information the SBA requested was extensive, and included, among other things, a "Comprehensive Corporate Organizational Chart showing relationships between affiliated entities and ownership listed, percentages owned, EIN/SSNs with detailed management listed for those who hold control;" and "2018 & 2019 complete, filed and signed Federal Income Tax returns for all entity affiliates."  *Id*. at 3.   On August 10, Hotel Californian provided the requested information.

On August 25, the SBA communicated its determination that Hotel Californian had been ineligible to receive the Loan and that, as a result, no portion of the Loan would be forgiven.  *See* Ex. H.  The SBA based this incorrect determination on the fact that Hotel Californian, "together with its affiliates," received "more than $4,000,000 of 2nd draw PPP loans in the aggregate."  *Id*.  In particular, the SBA asserted that the owners of Hotel Californian "have ownership and/or leadership in a total of 3 affiliated entities with a total loan amount of $6 MM, which exceeds the PPP Second Draw Size Standard of $4 MM."  *Id*. Further, the SBA claimed, inexplicably, that because two of the loans obtained by the Affiliated Entities, including Hotel Californian's loan, were disbursed on the same day, February 16, 2021, after another Affiliated Entity had already received a Second Draw Loan for $2 million on February 5, 2021, neither of the February 16 loans is eligible for forgiveness.

---

[2] Michael Rosenfeld holds 61 percent equity ownership of Hotel Californian and owns 90 percent of each of the other three Affiliated Entities.  On its Second Draw application, Hotel Californian noted that it shared a common owner with other businesses, and listed Mr. Rosenfeld as a 61 percent stake owner.  *See* Ex. B.  The applications for the other Affiliated Entities also all acknowledged Mr. Rosenfeld's ownership and the fact that they share a common owner with other businesses.  *See* Ex. E.  Hotel Californian neglected to list out the other Affiliated Entities by name on its application because it believed that, as a NAICS 72 entity, it was not required to do so.  We do so here.  Aside from their common ownership, the Affiliated Entities are unrelated to one another.

**GIBSON DUNN**

U.S. Small Business Administration
April 27, 2022
Page 4

In the decision, the SBA did not invoke the SCG limitation by name, and instead made repeated reference to the SBA's affiliation rules. However, the only provision in the SBA's Second Draw rules that purports to establish a $4 million cap on loans is the SCG limitation. Thus, in substance, the SBA's decision was clearly based on the SCG limitation, which is, in turn, essentially a reformulated version of the SBA's affiliation rules. Those rules were waived for purposes of the PPP by Congress for companies, like Hotel Californian, with an NAICS code that begins with 72 ("Statutory Affiliation Waiver"). *See* 15 U.S.C. § 636(a)(36)(D)(iv)(I).

On September 26, 2022, Hotel Californian filed an appeal petition that explained why the denial was in error. In particular, Hotel Californian noted in its previous petition that the SBA's affiliation rules do not apply to Hotel Californian, and that the SCG limitation also cannot bar Hotel Californian's participation in the PPP because it is simply another kind of affiliation-based eligibility restriction. In response, the SBA chose to withdraw its denial of Hotel Californian's application on November 21, 2022. *See* Ex. I. It did so without providing any explanation as to why it was no longer standing by its denial.

On January 10, 2023, the SBA sent another request for additional information about Hotel Californian. See Ex. J. Similar to the SBA's prior request for information, the January 10 letter requested details about the ownership structures of Hotel Californian and the Affiliated Entities. Hotel Californian had already acknowledged that it shares common ownership with the Affiliated Entities in its September 26 appeal petition. It nonetheless provided the request information.

Meantime, Newport was granted full forgiveness of its Second Draw loan on March 8, 2023. *See* Ex. K.[3] The circumstances surrounding Newport's Second Draw loan are, in all essential respects, identical to those connected with Hotel Californian's loan. Both loans were for $2 million, and were disbursed on February 16, 2021. *See id*. Newport's loan forgiveness application was initially denied on August 25, 2022 due to the same supposed "affiliation issues" referenced in the denial letter Hotel Californian received on the same day. Ex. L. Indeed, the operative language used in the two August 25 denial letters is identical. Like Hotel Californian, Newport filed an appeal petition challenging the denial. Newport's petition made all of the same arguments contained in Hotel Californian's petition regarding the illegality of barring loan eligibility based on affiliation issues. But instead of contesting

---

[3] Pine & Powell Partners, LLC's application for loan forgiveness was approved on January 10, 2023. *See* Ex. M. Huntington's loan forgiveness application was denied on January 23, 2023 because the loan both exceeded the SCG limitation and was supposedly used for ineligible expenditures. Huntington filed an appeal petition, and the OHA denied the petition on April 21, 2023, for reasons unrelated to the SCG limitation. The appeal proceedings remain pending as of the time of this filing.

**GIBSON DUNN**

U.S. Small Business Administration
April 27, 2022
Page 5

the appeal, the SBA forgave the loan, and filed a motion to dismiss the appeal on March 10, 2023 on mootness grounds, which was granted on March 27.  *See* Ex. N.

Despite having forgiven Newport's loan just a couple weeks earlier, on March 28, 2023—over four months after it withdrew its previous denial—the SBA issued a new loan forgiveness decision that again denied Hotel Californian loan forgiveness.  *See* Ex. A.  Remarkably, despite the SBA having taken far more time to issue its revised decision than it took to issue its original decision (and also taking more time than the 90 days allotted under the CARES Act for the SBA to render forgiveness decisions) the SBA's new Decision is functionally the same as its prior denial that it withdrew in November.  The new Decision states that Hotel Californian was not eligible to receive its Second Draw loan because it shares common ownership with other entities that, in the aggregate, received more than $4 million in Second Draw funding.  *See* Ex. A.  The only differences between the two decisions are that the SBA has dropped all references to affiliation—and replaced them with reference to Hotel Californian's "corporate group"—and no longer mentions the other loan disbursed on February 16, which, as noted, the SBA has forgiven.

The SBA's new Decision does not change the fact that the SCG limitation is *ultra vires*, and therefore cannot provide grounds to deny Hotel Californian loan forgiveness.  If anything, the new Decision underscores the illegality of the SCG limitation.  As applied to hotel businesses like Hotel Californian, the SCG eligibility restriction directly contradicts a central feature of Congress's relief plan for businesses and workers whose livelihoods were threatened by the pandemic; namely the waiver of the SBA's affiliation rules.  For all practical purposes, the SCG limitation is an affiliation-based restriction on a business concern's eligibility for PPP assistance, and thus introduces into the PPP an eligibility feature that Congress expressly waived for hotels and restaurants.  Moreover, even if the SBA could lawfully apply the SCG limitation, its decision to deny Hotel Californian's forgiveness application is arbitrary, and cannot be reconciled with how the SBA has treated the loan forgiveness applications of the other hotels.

**ARGUMENT**

***Hotel Californian Was Eligible to Receive $2 Million in Second Draw PPP Assistance***

The CARES Act established broad and permissive eligibility criteria for "any business concern" to receive PPP funds.[4]  15 U.S.C. § 636(a)(36)(D)(i); *see also DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 746 (6th Cir. 2020) ("The term 'any' carries an expansive meaning. . . That broad interpretation also comports with

---

[4] For purposes of SBA programs, "business concern" refers to "a business entity organized for profit."  13 C.F.R. § 121.105(a)(1).

**GIBSON DUNN**

U.S. Small Business Administration
April 27, 2022
Page 6

Congress's intent to provide support to as many displaced American workers as possible."). The primary limitation on eligibility for PPP loans is a business concern's size, as measured by employee headcount and gross receipts. *See* 15 U.S.C. § 636(a)(36)(D)(i). For Second Draw PPP loans, if the business concern has 300 or fewer employees, and had gross receipts during the first, second, third, or fourth quarters of 2020 that represent at least a 25 percent reduction from the gross receipts of the same quarter in 2019, the concern is generally eligible for second-draw PPP assistance. *See* 15 U.S.C. § 636(a)(37)(A)(iv). An eligible business concern could receive up to $2 million in PPP assistance in Second Draw loans. *See* 15 U.S.C. § 636(a)(37)(C); *see also* Small Business Administration, Paycheck Protection Program Loans Frequently Asked Questions 11 (July 29, 2021) ("The $10 million (or $2 million for a Second Draw PPP Loan) maximum loan amount limitation applies to each eligible business entity.").

When determining a business concern's size for loan eligibility purposes, the SBA typically takes into account whether the concern is affiliated with any other entities. *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20817, 20818 (April 15, 2020) ("In most cases, a borrower will be considered together with its affiliates for purposes of determining eligibility for the PPP."); *see also* 13 C.F.R. § 121.301(a)(2) ("The size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher."); *Concord Crossroads, LLC v. Hum. Cap. Res. & Concepts, Inc.*, 2020 WL 9367543, at *6 (E.D. Va. Sept. 2, 2020) (affiliation rules are pertinent for "size determination purposes"). However, for the PPP, Congress expressly waived application of these affiliation rules for certain businesses, including businesses "assigned a North American Industry Classification System code beginning with 72." 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Under this statutory scheme, Hotel Californian was plainly eligible to receive a Second Draw PPP loan up to the maximum amount of $2 million. It is a business concern that had 63 employees at the time it applied for a Second Draw loan, and that experienced a 78 percent reduction in gross receipts from the second quarter of 2019 to the second quarter of 2020. *See* Ex. B. Moreover, while it is affiliated through common ownership with three other entities that, in the aggregate, employ more than 300 people, Hotel Californian has a NAICS code of 721110. *See id.* That means its affiliation—including common ownership—with the other entities is irrelevant to its PPP eligibility. *See Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, 86 Fed. Reg. 3712, 3714 (Jan. 14, 2021) ("Under the CARES Act, any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) . . . is eligible . . . [The] SBA's affiliation rules (13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72."). Further, as an "eligible recipient" that spent the full

**GIBSON DUNN**

U.S. Small Business Administration
April 27, 2022
Page 7

amount of its Second Draw PPP loan on allowable expenditures, Hotel Californian is entitled to full forgiveness of the loan amount.  *See* 15 U.S.C. § 636m(b).

### The SBA's Basis for Denying Loan Forgiveness Is Unlawful

Based on a rule found nowhere in the CARES Act, that it was not authorized to promulgate, and that directly contradicts Congress's Statutory Affiliation Waiver, the SBA reached a different and erroneous conclusion.  Under the SBA's rules, businesses "are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent."  86 Fed. Reg. 3692, 3702 (Jan. 14, 2021) (definition of "single corporate group" for first-draw loans); *see Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, 86 Fed. Reg. 3712, 3720 (Jan. 14, 2021) (adopting same definition of "single corporate group" for second-draw loans).  Under the SCG rule, which was designed specifically to limit access to PPP loans, business entities that are part of an SCG are ineligible, in the aggregate, to receive more than $4 million in PPP loans.  *See* 86 Fed. Reg. at 3720.

In brief, the SCG limitation is completely unmoored from—and contradicts—the authorizing statute's eligibility provisions.  It is thus unlawful, and can provide no basis for the SBA to deny Hotel Californian's loan forgiveness application.

To begin with, the SBA does not have authority to promulgate regulatory restrictions that override the CARES Act's more specific eligibility provisions.  *See Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020).  It is black letter law that "[r]egulations cannot contradict their animating statutes."  *Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*, 941 F.3d 1288, 1299 (11th Cir. 2019).  Yet the SBA's SCG limitation does exactly that, flatly contravening Congress's waiver of the affiliation rules for NAICS 72 entities.

As noted, the SCG limitation turns on majority ownership.  *See* 86 Fed. Reg. 3692, 3702.  That same criterion is also a determining factor for application of the SBA's affiliation rules.  While there are other factors that also satisfy the affiliation rules, the rules treat common majority ownership shared by two or more entities as sufficient to establish affiliation, which, depending on the size of the affiliated entities, can bar them from receiving an SBA loan.  *See* 13 C.F.R. § 121.103(c) ("A person . . . that owns, or has the power to control, 50 percent or more of a concern's voting stock . . . controls or has the power to control the concern.").  Likewise, for business concerns like Hotel Californian that are affiliated with entities that collectively applied for and previously received more than $4 million in Second Draw PPP loans, the SCG limitation treats that affiliation as an absolute bar to their access to the program.  Thus, while, in its interim final rules, the SBA may label the SCG rule as a restriction only on the amount entities can borrow, as-applied and in

SBA_000088

**GIBSON DUNN**

U.S. Small Business Administration
April 27, 2022
Page 8

practical effect the rule is an affiliation-based bar to loan eligibility for many business concerns.

There is no way to reconcile that sort of rule with the statutory text.  The CARES Act provides that the "provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived *with respect to eligibility* for a covered loan for . . . any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72."  15 U.S.C. § 636(a)(36)(D)(iv)(I) (emphasis added).  As the SBA itself has explained, that means the "SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72."  Small Business Administration, Paycheck Protection Program Loans Frequently Asked Questions 11 (July 29, 2021).  Despite this clear statutory command, the SBA has sought to reintroduce an affiliation-based bar to eligibility, effectively nullifying aspects of Congress's complete and unqualified waiver of the affiliation rules, which, notably, applied not only to the SBA's existing affiliation rules, but also to any "successor regulations," such as the SBA's PPP interim final rules, which announce the SCG limitation.  It stands to reason that Congress added the "successor regulation" limitation because it did not want the SBA to do what it is trying to do now; namely, bar hotels and restaurants from participation in the program because of their affiliation with other hotels and restaurants.

The tortuous path by which the SBA arrived at its latest denial of Hotel Californian's loan forgiveness application makes abundantly clear that the SCG rule and the SBA's affiliation rules are, effectively, one and the same.  The first denial letter issued in August 2022 expressly invoked Hotel Californian's affiliation with other borrowers, in terms drawn directly from the SBA's waived affiliation rules, noting that the hotel's owners "have *ownership and/or leadership* in a total of 3 *affiliated* entities with a total loan amount of $6 MM, which exceeds the PPP Second Draw *Size Standard* of $4 MM."  Ex. H (emphases added); *see also* 13 C.F.R. § 121.201 ("The size standards . . . indicate[] the maximum allowed for a concern and its affiliates to be considered small."); 13 C.F.R. § 121.103(a)(2) ("SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships, in determining whether affiliation exists.").  Similarly, the SBA's August 3 pre-determination letter indicated that the SBA was looking at "Potential Affiliation Issues," and requested information about whether the Affiliated Entities share common management or are controlled by the same entity—again, all factors that are drawn directly from the SBA's waived affiliation rules.  *See* Ex. G.

In its new denial Decision, the SBA eschews any express references to the affiliation rules contained in the earlier denials, and instead references the agency's "corporate group"

# GIBSON DUNN

U.S. Small Business Administration
April 27, 2022
Page 9

rule. *See* Ex. A. But in substance, the new denial is identical to the previous one. Both denials assert that Hotel Californian, in combination with other entities with which it shares common ownership, received more than $4 million in Second Draw loans, and that Hotel Californian was therefore ineligible to receive any Second Draw assistance. The SBA can play all of the semantic games it likes—they do not change the fact that the agency is attempting an end-run around the Statutory Affiliation Waiver.

In short, however the SCG limitation may be labelled in the regulations, the SBA's interpretation of and the practical consequences of the rule make clear that the limitation is simply a variation of the affiliation rules Congress waived for NAICS 72 entities with a new label. It is thus unlawful, and cannot serve as a basis for denying Hotel Californian's loan forgiveness application. *See Djie v. Garland*, 39 F.4th 280, 285 (5th Cir. 2022) ("When a regulation attempts to override statutory text, the regulation loses every time—regulations can't punch holes in the rules Congress has laid down.").

In support of its clear "usurpation of Congressional authority to determine which business [sic] are eligible for PPP funds," *Archdiocese of Santa Fe*, 615 B.R. at 656, the SBA claimed in its interim final rules creating the SCG limitation that the CARES Act "specif[ies] a 'maximum'—but not a minimum—loan amount," and thus asserted that it could fix a different cap on how much in PPP assistance an SCG receives. 86 Fed. Reg. 3692, 3702 n.59. But that justification ignores and undermines basic features of the statutory scheme.

For one thing, the CARES Act makes PPP loans available to "business concerns," a term which, as noted, refers to single, distinct legal entities, not to a group of affiliated entities. *See* 13 C.F.R. § 121.105(a)(1); *see also* Small Business Administration, Paycheck Protection Program Loans Frequently Asked Questions 11 (July 29, 2021) ("[I]f each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees (or 300 employees for a Second Draw PPP loan) is permitted to apply for a separate PPP loan."). The SCG limitation therefore is not a cap on how much a business concern can receive in PPP loans, but rather a wholesale exclusion from the program if, as happened to Hotel Californian, the business concern happens to be affiliated with other business concerns that have already taken out separate loans.

Moreover, the statute is clearly designed to cover with PPP assistance as much of a business concern's payroll costs as is reasonably possible. In calculating the Second Draw loan amount for NAICS 72 entities, the SBA is to multiply the average monthly payroll costs of the business concern for the one-year period preceding the loan application by 3.5, subject to a $2 million limit. *See* 15 U.S.C. § 636(a)(37)(C)(iv). There is nothing in the statute

**GIBSON DUNN**

U.S. Small Business Administration
April 27, 2022
Page 10

providing the SBA with separate authority to further revise this carefully structured formula by introducing new maximums unrelated to payroll costs.[5]

    "Regardless of how serious the problem an administrative agency seeks to address, . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) (quoting *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517 (1988)). However worthy the goal of the SCG limitation to "preserve finite appropriations for PPP loans" may be, the SBA cannot accomplish it by excluding from the program a NAICS 72 business concern that is clearly eligible, based on a factor that Congress expressly said should not apply to NAICS 72 entities. 86 Fed. Reg. 3692, 3702 n.59. Given its practical consequences, the SCG limitation is nothing more than an "end run around th[e] clear statutory language" of the Statutory Affiliation Waiver. *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1225 (10th Cir. 2017). Put slightly differently, the SBA clearly could not enact rules expressly purporting to bar NAICS 72 entities from the PPP based on affiliation, yet the SCG limitation "has this precise effect," putting it crosswise with the CARES Act. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91–92 (2002). It thus must be set aside, and cannot support the SBA's Decision. *See* 5 U.S.C. § 706(2)(A).

### The SBA's Denial of Loan Forgiveness Is Arbitrary and Capricious

    "A fundamental norm of administrative procedure requires an agency to treat like cases alike." *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007). If an agency seeks to treat similar cases differently, it must "point to a relevant distinction between

---

[5] Indeed, many courts have recognized that the SBA has no authority to create *any* new restrictions on PPP eligibility that are not found in the CARES Act or Congress's later amendments to that statute. *See, e.g.*, *DV Diamond Club of Flint*, 960 F.3d at 746–47 ("[T]he [CARES] Act's specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation. That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible . . . Finally, by specifying 'any business concern,' Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances."); *Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1056 (E.D. Wis. 2020) (regulatory exclusion of certain businesses from PPP eligibility exceeded SBA's authority); *In re Skefos*, 2020 WL 2893413, at *10 (Bankr. W.D. Tenn. June 2, 2020) ("Congress expressed its intent through the CARES Act and the PPP that emergency support be provided to American workers facing the loss of income . . . in the face of the worst global pandemic in more than 100 years. Within that framework, the Administrator was not authorized to exclude American workers on the basis that they happened to be employed by a debtor in bankruptcy."); *In re Roman Cath. Church of Archdiocese of Santa Fe*, 615 B.R. 644, 655 (Bankr. D.N.M. 2020) ("The CARES Act directly addresses the PPP eligibility requirements. It charged [the SBA] with issuing 'regulations to carry out this title....' Section 1114. [The SBA] had no authority under this charge to change the eligibility requirements."). The SCG limitation is, in all material respects, the same as these other restrictions on PPP eligibility that courts have struck down. It bars from eligibility businesses that, like Hotel Californian, clearly are within the class of entities that Congress intended to aid through the CARES Act.

**GIBSON DUNN**

U.S. Small Business Administration
April 27, 2022
Page 11

the two cases." *Id*. Failure to do so means the agency's action is arbitrary and capricious, and must be set aside.

There are no material differences—indeed virtually no differences whatsoever—between Newport's and Hotel Californian's Second Draw loans. Both loans were for $2 million, and were disbursed on the same day to entities that share the same common ownership with each other and the other Affiliated Entities. Like Hotel Californian's loan, Newport's loan was initially denied due to "affiliation issues." But, unlike Hotel Californian, Newport was later granted forgiveness once it explained to the SBA why denying its forgiveness application is inconsistent with the Statutory Affiliation Waiver.

The SBA's actions have thus effectively barred one entity, Hotel Californian, from any participation in the Second Draw phase of the PPP, while allowing a similarly-situated entity, Newport, full access to the program. And at no point has the SBA offered an explanation for this difference in treatment. Its failure to do so renders its denial of Hotel Californian's application arbitrary and capricious. The denial must therefore be set aside.

## CONCLUSION

For the foregoing reasons, we respectfully ask the SBA to reverse the latest Final Loan Review Decision denying Hotel Californian's loan forgiveness application. Please contact me (+1 (202) 955-8256 or mbopp@gibsondunn.com) if you have any questions regarding this appeal petition or if you require additional information.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

Michael D. Bopp
Partner

Attachment



**SMALL BUSINESS ADMINISTRATION
WASHINGTON, DC 20416**

03/28/2023

VIA FORGIVENESS PLATFORM



East West Bank

Re: PAYCHECK PROTECTION PROGRAM FINAL SBA LOAN REVIEW DECISION
    Borrower: 35 STATE STREET HOTEL PARTNERS, LLC
    SBA Loan No.: ██████████
    Approved Loan Amount: $2,000,000.00
    Loan Approval Date: 02/08/2021
    Lender Forgiveness Decision Submission Date: 06/07/2022
    Lender Forgiveness Decision Amount: $2,000,000.00
    SBA Final Forgiveness Amount: $ 0.00

*Dear:* ████████

The U.S. Small Business Administration (SBA) has completed its review of the above-referenced Paycheck Protection Program (PPP) loan.  Based on a review of lender and/or borrower submissions, and consideration of the facts and circumstances, SBA has made a final SBA loan review decision.

---

**After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $4,000,000 of 2nd draw PPP loans in the aggregate. Rosenfeld et al is a "family" of 4 entities defined by common ownership by Michael Rosenfeld, as disclosed and attested on the borrower's form 3511, 2483SD, and CAFS. Rosenfeld et al received $8,000,000 in second draw loans, more than the corporate max of $4MM**

**Therefore, the borrower does not meet eligibility requirements for forgiveness of the Paycheck Protection Program Loan.**

---

Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate. Additional details regarding the forgiveness payment

SBA_000095

amount (if any) will be provided in a Notice of Paycheck Protection Program Forgiveness Payment.

Within 5 business days of the date of this letter, you must provide a copy of this final SBA loan review decision to the borrower.

You must continue to service the loan. You must notify the borrower that the remaining balance of the loan after application of the forgiveness payment (if any) must be repaid on or before the maturity date. The notification must include the date on which the first principal and interest payment is due and the amount of the borrower's regular payment. As set forth below, if the borrower files a timely appeal with SBA's Office of Hearings and Appeals (OHA), the deferment period of the loan will be extended pursuant to 13 CFR § 134.1211.

Pursuant to 13 CFR § 134.1201(b), the borrower has the right to appeal to SBA's Office of Hearings and Appeals a final SBA loan review decision that the borrower:

1. was ineligible for a PPP loan;
2. was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;
3. is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; and/or
4. is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.

Any appeal must be made in accordance with the SBA Rules of Practice for Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program, located at 13 CFR § 134.1201, *et seq.*, including but not limited to the following:

- An appeal petition must be filed with SBA's Office of Hearings and Appeals (OHA) within 30 calendar days after the borrower's receipt of the final SBA loan review decision. 13 CFR § 134.1202(a). To file and manage an appeal of a final SBA loan review decision with OHA, refer to [Office of Hearings and Appeals](Office of Hearings and Appeals).
- Borrower must include, among other things, a copy of this final SBA loan review decision with its appeal. 13 CFR § 134.1204(a).
- Borrower must provide you (the lender) with a copy of the timely appeal petition filed with OHA so that you can extend the deferment period of the loan. 13 CFR § 134.1202(b).
- An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a federal district court. 13 CFR § 134.1201(d).

Thank you for your cooperation.

Sincerely,

Office of Capital Access
U.S. Small Business Administration

SBA_000096



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

OMB Control No.: 3245-0417
Expiration Date: 7/31/2021

| Check One: | ☐ Sole Proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC ☐ Independent Contractor ☐ Self-Employed Individual ☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization ☐ 501(c)(19) veterans organization ☐ Housing cooperative ☐ Tribal Business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|---|
| | | Hotel Californian | 2010 |

| Business Legal Name | NAICS Code |
|---|---|
| 35 State Street Hotel Partners, LLC | 721110 |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| Property Physical Address: 36 State St, Santa Barbara, CA 93101-4983 Entity Mailing Address: 1999 Avenue of Stars, Suite 2850, Los Angeles, CA 90067-4627 | | |
| | Primary Contact | Email Address |
| | | |

| Average Monthly Payroll: | $782,980.62 | x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000): | $2,000,000.00 | Number of Employees (including affiliates, if applicable; may not exceed 300): | 173.00 |
|---|---|---|---|---|---|

| Purpose of the loan (select all that apply): | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | ☑ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☑ Covered Supplier Costs | ☑ Covered Worker Protection Expenditures | ☐ Other (explain): |

| PPP First Draw SBA Loan Number: | |
|---|---|

| Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request): | 2020 Quarter (e.g., 2Q 2020): | 2Q 2020 | Reference Quarter (e.g., 2Q 2019): | 2Q 2019 |
|---|---|---|---|---|
| | Gross Receipts: | | Gross Receipts | |

**Applicant Ownership**
List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Michael Rosenfeld | Manager | 61 | | |
| Glorya Kaufman | Owner | 29 | | |

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | ✓ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | ✓ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | ✓ | |
| 4. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 4 → | | ✓ |
| 5. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 5 → | | ✓ |
| 6. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | ✓ | |
| 7. Is the Applicant a franchise? | | ✓ |
| 8. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | ✓ |



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.

- I will comply, whenever applicable, with the civil rights and other limitations in this form.

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information.

- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.

- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan.

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings

provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78l).

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

The Applicant is not required to submit a registration statement under section 2 of the Foreign Agents Registration Act of 1938 (22 U.S.C. 612).

The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

35 State Street Hotel Partners, LLC, a Delaware limited liability company

**01/20/21**

_____
Signature of Authorized Representative of Applicant

Date

Michael Rosenfeld

**Manager**

_____
Print Name

Title



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

## Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

## Instructions for completing this form:

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage (including insurance premiums), group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses without 12 months of payroll costs but that were in operation on February 15, 2020, average monthly payroll may be calculated based on the number of months in which payroll costs were incurred, excluding costs over $100,000 on an annualized basis for each employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

In determining whether the Applicant experienced at least a 25% reduction in gross receipts, for loans above $150,000, the Applicant must identify the 2020 quarter meeting this requirement, identify the reference quarter, and state the gross receipts amounts for both quarters, as well as provide supporting documentation. For loans of $150,000 and below, these fields are not required and the Applicant only must certify that the Applicant has met the 25% gross receipts reduction at the time of application; however, upon or before seeking loan forgiveness (or upon SBA request) the Applicant must provide documentation that identifies the 2020 quarter meeting this requirement, identifies the reference quarter, states the gross receipts amounts for both quarters, and supports the amounts provided. For all loans, the appropriate reference quarter depends on how long the Applicant has been in operation:

• For all entities other than those satisfying the conditions set forth below, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the same quarter of 2019. Alternatively, Applicants may compare annual gross receipts in 2020 with annual gross receipts in 2019; Applicants choosing to use annual gross receipts must enter "Annual" in the 2020 Quarter and Reference Quarter fields and, as required documentation, must submit copies of annual tax forms substantiating the annual gross receipts reduction.

• For entities not in business during the first and second quarters of 2019 but in operation during the third and fourth quarters of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than either the third or fourth quarters of 2019.

• For entities not in business during the first, second, and third quarters of 2019 but in operation during the fourth quarter of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the fourth quarter of 2019.

• For entities not in business during 2019 but in operation on February 15, 2020, Applicants must demonstrate that gross receipts in the second, third, or fourth quarter of 2020 were at least 25% lower than the first quarter of 2020.

Gross receipts includes all revenue in whatever form received or accrued (in accordance with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms. Gross receipts do not include the following: taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from gross receipts. Gross receipts of a borrower must be aggregated with gross receipts of its affiliates. For a nonprofit organization, veterans organization, nonprofit news organization, 501(c)(6) organization, and destination marketing organization, gross receipts has the meaning in section 6033 of the Internal Revenue Code of 1986.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box "Employees" is one). For NAICS 72 or eligible news organizations, applicants may not exceed 300 per physical location.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable. For purposes of calculating an Applicant's maximum payroll costs, an Applicant may multiply its average monthly payroll costs by 3.5 only if the Applicant is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 as its business activity code on its most recent IRS income tax return.

All parties listed below are considered owners of the Applicant as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

## PPP Borrower Demographic Information Form (Optional)

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position | |
|---|---|---|---|
| | | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | | |
| Gender | M=Male; F=Female; X=Not Disclosed | | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | | |

**Disclosure is voluntary and will have no bearing on the loan application decision**



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

OMB Control No.: 3245-0417
Expiration Date: 7/31/2021

| Check One: | ☐ Sole Proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC<br>☐ Independent Contractor ☐ Self-Employed Individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization<br>☐ 501(c)(19) veterans organization ☐ Housing cooperative<br>☐ Tribal Business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|---|
| | | Stanford Court Hotel | 2014 |

| Business Legal Name | NAICS Code |
|---|---|
| Pine & Powell Partners, LLC | 721110 |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| Property Physical Address: 905 California St, San Francisco, CA 94108-2201<br>Entity Mailing Address: 1999 Avenue of Stars, Suite 2850, Los Angeles, CA 90067-4627 | ▉ | ▉ |
| | Primary Contact | Email Address |
| | ▉ | ▉ |

| Average Monthly Payroll: | ▉ | x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000): | $ 2,000,000.00 | Number of Employees (including affiliates, if applicable; may not exceed 300): | 117.00 |
|---|---|---|---|---|---|

| Purpose of the loan (select all that apply): | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | ☑ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☑ Covered Supplier Costs | ☑ Covered Worker Protection Expenditures | ☐ Other (explain): |

| PPP First Draw SBA Loan Number: | ▉ |
|---|---|

| Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request): | 2020 Quarter (e.g., 2Q 2020): | 2Q 2020 | Reference Quarter (e.g., 2Q 2019): | 2Q 2019 |
|---|---|---|---|---|
| | Gross Receipts: | ▉ | Gross Receipts: | ▉ |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Michael Rosenfeld | Manager | 90 | ▉ | ▉ |
| | | | | |

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| | Question | Yes | No |
|---|---|---|---|
| 1. | Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | ✓ |
| 2. | Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | ✓ |
| 3. | Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | ✓ | |
| 4. | Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?<br>Initial here to confirm your response to question 4 → | | ✓ |
| 5. | Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 5 → | | ✓ |
| 6. | Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | ✓ | |
| 7. | Is the Applicant a franchise? | | ✓ |
| 8. | Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | ✓ |



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

<u>By Signing Below, You Make the Following Representations, Authorizations, and Certifications</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.

- I will comply, whenever applicable, with the civil rights and other limitations in this form.

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information.

- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.

- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan.

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings

provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

The Applicant is not required to submit a registration statement under section 2 of the Foreign Agents Registration Act of 1938 (22 U.S.C. 612).

The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

Pine & Powell Partners, LLC, a Delaware limited liability company

01/20/21

Signature of Authorized Representative of Applicant          Date

Michael Rosenfeld          Manager

Print Name          Title



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

### Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

### Instructions for completing this form:

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage (including insurance premiums), group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses without 12 months of payroll costs but that were in operation on February 15, 2020, average monthly payroll may be calculated based on the number of months in which payroll costs were incurred, excluding costs over $100,000 on an annualized basis for each employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

In determining whether the Applicant experienced at least a 25% reduction in gross receipts, for loans above $150,000, the Applicant must identify the 2020 quarter meeting this requirement, identify the reference quarter, and state the gross receipts amounts for both quarters, as well as provide supporting documentation. For loans of $150,000 and below, these fields are not required and the Applicant only must certify that the Applicant has met the 25% gross receipts reduction at the time of application; however, upon or before seeking loan forgiveness (or upon SBA request) the Applicant must provide documentation that identifies the 2020 quarter meeting this requirement, identifies the reference quarter, states the gross receipts amounts for both quarters, and supports the amounts provided. For all loans, the appropriate reference quarter depends on how long the Applicant has been in operation:

• For all entities other than those satisfying the conditions set forth below, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the same quarter of 2019. Alternatively, Applicants may compare annual gross receipts in 2020 with annual gross receipts in 2019; Applicants choosing to use annual gross receipts must enter "Annual" in the 2020 Quarter and Reference Quarter fields and, as required documentation, must submit copies of annual tax forms substantiating the annual gross receipts reduction.

• For entities not in business during the first and second quarters of 2019 but in operation during the third and fourth quarters of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than either the third or fourth quarters of 2019.

• For entities not in business during the first, second, and third quarters of 2019 but in operation during the fourth quarter of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the fourth quarter of 2019.

• For entities not in business during 2019 but in operation on February 15, 2020, Applicants must demonstrate that gross receipts in the second, third, or fourth quarter of 2020 were at least 25% lower than the first quarter of 2020.

Gross receipts includes all revenue in whatever form received or accrued (in accordance with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms. Gross receipts do not include the following: taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from gross receipts. Gross receipts of a borrower must be aggregated with gross receipts of its affiliates. For a nonprofit organization, veterans organization, nonprofit news organization, 501(c)(6) organization, and destination marketing organization, gross receipts has the meaning in section 6033 of the Internal Revenue Code of 1986.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box "Employees" is one). For NAICS 72 or eligible news organizations, applicants may not exceed 300 per physical location.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable. For purposes of calculating an Applicant's maximum payroll costs, an Applicant may multiply its average monthly payroll costs by 3.5 only if the Applicant is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 as its business activity code on its most recent IRS income tax return.

All parties listed below are considered owners of the Applicant as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** -- You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

**PPP Borrower Demographic Information Form (Optional)**

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | Position | |
|---|---|---|
| | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | |
| Gender | M=Male; F=Female; X=Not Disclosed | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | |

**Disclosure is voluntary and will have no bearing on the loan application decision**



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

OMB Control No.: 3245-0417
Expiration Date: 7/31/2021

| Check One: | ☐ Sole Proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC<br>☐ Independent Contractor ☐ Self-Employed Individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization<br>☐ 501(c)(19) veterans organization ☐ Housing cooperative<br>☐ Tribal Business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|---|
| | | Hyatt Regency Newport Beach | 2018 |

| Business Legal Name | NAICS Code |
|---|---|
| WRC Newport, LLC | 721110 |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| Property Physical Address: 1107 Jamboree Rd, Newport Beach, CA 92660-6219 | | |
| Entity Mailing Address: 1999 Avenue of the Stars, Suite 2850, Los Angeles, CA 90067-4627 | Primary Contact | Email Address |
| | | |

| Average Monthly Payroll: | | x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000): | $2,000,000.00 | Number of Employees (including affiliates, if applicable; may not exceed 300): | 181.00 |
|---|---|---|---|---|---|

| Purpose of the loan (select all that apply): | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | ☑ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☑ Covered Supplier Costs | ☑ Covered Worker Protection Expenditures | ☐ Other (explain): |

| PPP First Draw SBA Loan Number: | |
|---|---|

| Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request): | 2020 Quarter (e.g., 2Q 2020): | 2Q 2020 | Reference Quarter (e.g., 2Q 2019): | 2Q 2019 |
|---|---|---|---|---|
| | Gross Receipts: | | Gross Receipts | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Michael Rosenfeld | Authorized Signatory | 53 | | |
| Robert Spears | Owner | 22 | | |
| James Parks | owner | 22 | | |

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | ✓ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | ✓ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | ✓ | |
| 4. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?<br>Initial here to confirm your response to question 4 → | | ✓ |
| 5. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 5 → | | ✓ |
| 6. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | ✓ | |
| 7. Is the Applicant a franchise? | | ✓ |
| 8. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | ✓ |



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan.

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings

provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

The Applicant is not required to submit a registration statement under section 2 of the Foreign Agents Registration Act of 1938 (22 U.S.C. 612).

The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

WRC Newport, LLC, a Delaware limited liability company

01/20/21

_____
Signature of Authorized Representative of Applicant

_____
Date

Michael Rosenfeld

Authorized Signatory

_____
Print Name

_____
Title



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

#### Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

#### Instructions for completing this form:

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage (including insurance premiums), group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses without 12 months of payroll costs but that were in operation on February 15, 2020, average monthly payroll may be calculated based on the number of months in which payroll costs were incurred, excluding costs over $100,000 on an annualized basis for each employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

In determining whether the Applicant experienced at least a 25% reduction in gross receipts, for loans above $150,000, the Applicant must identify the 2020 quarter meeting this requirement, identify the reference quarter, and state the gross receipts amounts for both quarters, as well as provide supporting documentation. For loans of $150,000 and below, these fields are not required and the Applicant only must certify that the Applicant has met the 25% gross receipts reduction at the time of application; however, upon or before seeking loan forgiveness (or upon SBA request) the Applicant must provide documentation that identifies the 2020 quarter meeting this requirement, identifies the reference quarter, states the gross receipts amounts for both quarters, and supports the amounts provided. For all loans, the appropriate reference quarter depends on how long the Applicant has been in operation:

• For all entities other than those satisfying the conditions set forth below, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the same quarter of 2019. Alternatively, Applicants may compare annual gross receipts in 2020 with annual gross receipts in 2019; Applicants choosing to use annual gross receipts must enter "Annual" in the 2020 Quarter and Reference Quarter fields and, as required documentation, must submit copies of annual tax forms substantiating the annual gross receipts reduction.

• For entities not in business during the first and second quarters of 2019 but in operation during the third and fourth quarters of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than either the third or fourth quarter of 2019.

• For entities not in business during the first, second, and third quarters of 2019 but in operation during the fourth quarter of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the fourth quarter of 2019.

• For entities not in business during 2019 but in operation on February 15, 2020, Applicants must demonstrate that gross receipts in the second, third, or fourth quarter of 2020 were at least 25% lower than the first quarter of 2020.

Gross receipts includes all revenue in whatever form received or accrued (in accordance with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms. Gross receipts do not include the following: taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from gross receipts. Gross receipts of a borrower must be aggregated with gross receipts of its affiliates. For a nonprofit organization, veterans organization, nonprofit news organization, 501(c)(6) organization, and destination marketing organization, gross receipts has the meaning in section 6033 of the Internal Revenue Code of 1986.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box "Employees" is one). For NAICS 72 or eligible news organizations, applicants may not exceed 300 per physical location.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable. For purposes of calculating an Applicant's maximum payroll costs, an Applicant may multiply its average monthly payroll costs by 3.5 only if the Applicant is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 as its business activity code on its most recent IRS income tax return.

All parties listed below are considered owners of the Applicant as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

**PPP Borrower Demographic Information Form (Optional)**

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | Position |  |
|---|---|---|
|  |  |  |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed |  |
| Gender | M=Male; F=Female; X=Not Disclosed |  |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed |  |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed |  |

**Disclosure is voluntary and will have no bearing on the loan application decision**



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

OMB Control No.: 3245-0417
Expiration Date: 7/31/2021

| Check One: | ☐ Sole Proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC ☐ Independent Contractor ☐ Self-Employed Individual | **DBA or Tradename (if applicable)** | **Year of Establishment (if applicable)** |
|---|---|---|---|
| | ☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization ☐ 501(c)(19) veterans organization ☐ Housing cooperative ☐ Tribal Business ☐ Other | **Huntington Hotel** | 2018 |

| **Business Legal Name** | **NAICS Code** |
|---|---|
| WRC Huntington, LLC | 721110 |

| **Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed)** | **Business TIN (EIN, SSN)** | **Business Phone** |
|---|---|---|
| Property Physical Address: 1075 California St, San Francisco, CA 94108-2251 Entity Mailing Address: 1999 Avenue of Stars, Suite 2850, Los Angeles, CA 90067-4627 | | |
| | **Primary Contact** | **Email Address** |
| | | |

| **Average Monthly Payroll:** | | **x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000):** | $2,000,000.00 | **Number of Employees (including affiliates, if applicable; may not exceed 300):** | 128.00 |
|---|---|---|---|---|---|

| **Purpose of the loan (select all that apply):** | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | ☑ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☑ Covered Supplier Costs | ☑ Covered Worker Protection Expenditures | ☐ Other (explain): |

| **PPP First Draw SBA Loan Number:** | |
|---|---|

| **Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request):** | **2020 Quarter (e.g., 2Q 2020):** | 2Q 2020 | **Reference Quarter (e.g., 2Q 2019):** | 2Q 2019 |
|---|---|---|---|---|
| | **Gross Receipts:** | | **Gross Receipts** | |

**Applicant Ownership**
List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| **Owner Name** | **Title** | **Ownership %** | **TIN (EIN, SSN)** | **Address** |
|---|---|---|---|---|
| Michael Rosenfeld | Authorized Signatory | 90 | | |
| | | | | |

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| **Question** | **Yes** | **No** |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | ✓ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | ✓ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | ✓ | |
| 4. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 4 → | | ✓ |
| 5. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 5 → | | ✓ |
| 6. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | ✓ | |
| 7. Is the Applicant a franchise? | | ✓ |
| 8. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | ✓ |



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.

- I will comply, whenever applicable, with the civil rights and other limitations in this form.

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information.

- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.

- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan.

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings

provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

The Applicant is not required to submit a registration statement under section 2 of the Foreign Agents Registration Act of 1938 (22 U.S.C. 612).

The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

WRC Huntington, LLC, a Delaware limited liability company

01/20/21

_____
Signature of Authorized Representative of Applicant

Date

Michael Rosenfeld

Authorized Signatory

_____
Print Name

Title



**Paycheck Protection Program**
**Second Draw Borrower Application Form**

## Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

## Instructions for completing this form:

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage (including insurance premiums), group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses without 12 months of payroll costs but that were in operation on February 15, 2020, average monthly payroll may be calculated based on the number of months in which payroll costs were incurred, excluding costs over $100,000 on an annualized basis for each employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

In determining whether the Applicant experienced at least a 25% reduction in gross receipts, for loans above $150,000, the Applicant must identify the 2020 quarter meeting this requirement, identify the reference quarter, and state the gross receipts amounts for both quarters, as well as provide supporting documentation. For loans of $150,000 and below, these fields are not required and the Applicant only must certify that the Applicant has met the 25% gross receipts reduction at the time of application; however, upon or before seeking loan forgiveness (or upon SBA request) the Applicant must provide documentation that identifies the 2020 quarter meeting this requirement, identifies the reference quarter, states the gross receipts amounts for both quarters, and supports the amounts provided. For all loans, the appropriate reference quarter depends on how long the Applicant has been in operation:

• For all entities other than those satisfying the conditions set forth below, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the same quarter of 2019. Alternatively, Applicants may compare annual gross receipts in 2020 with annual gross receipts in 2019; Applicants choosing to use annual gross receipts must enter "Annual" in the 2020 Quarter and Reference Quarter fields and, as required documentation, must submit copies of annual tax forms substantiating the annual gross receipts reduction.

• For entities not in business during the first and second quarters of 2019 but in operation during the third and fourth quarters of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than either the third or fourth quarters of 2019.

• For entities not in business during the first, second, and third quarters of 2019 but in operation during the fourth quarter of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the fourth quarter of 2019.

• For entities not in business during 2019 but in operation on February 15, 2020, Applicants must demonstrate that gross receipts in the second, third, or fourth quarter of 2020 were at least 25% lower than the first quarter of 2020.

Gross receipts includes all revenue in whatever form received or accrued (in accordance with the entity's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms. Gross receipts do not include the following: taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from gross receipts. Gross receipts of a borrower must be aggregated with gross receipts of its affiliates. For a nonprofit organization, veterans organization, nonprofit news organization, 501(c)(6) organization, and destination marketing organization, gross receipts has the meaning in section 6033 of the Internal Revenue Code of 1986.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box "Employees" is one). For NAICS 72 or eligible news organizations, applicants may not exceed 300 per physical location.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable. For purposes of calculating an Applicant's maximum payroll costs, an Applicant may multiply its average monthly payroll costs by 3.5 only if the Applicant is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 as its business activity code on its most recent IRS income tax return.

All parties listed below are considered owners of the Applicant as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

## PPP Borrower Demographic Information Form (Optional)

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position | |
|---|---|---|---|
| | | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | | |
| Gender | M=Male; F=Female; X=Not Disclosed | | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | | |

**Disclosure is voluntary and will have no bearing on the loan application decision**